DAVID GARRISON et al. *v.* ELIAS FISHER.

A married woman, under the act of 1839, (Hutch. Code, 496,) may acquire property by direct bequest, demise, gift, purchase, or distribution. So that she has a perfect right to purchase property, subject only to the restriction, that it " does not come from her husband after coverture."

A married woman may sell her property in the mode required in the statute, for the purpose of purchasing other property, and when the proceeds are so applied, the property purchased becomes her separate property.

The fifth section of the act of 1839 provides that the separate slave property of a *feme covert* may be sold by the joint deed of the husband and wife, executed, proved, and recorded agreeably to the laws " in regard to the conveyance of the real estate of a *feme covert*, and not otherwise;" and all other modes of conveying such property are void.

The statute of 1822 provides, among other requisites, that no estate of a *feme covert* in lands shall pass by her deed "without a previous acknowledgment made by her on a private examination, apart from her husband," &c. *Held,* that this must be shown positively and distinctly, and is not to depend on inference; otherwise no title passes by the conveyance.

ON appeal from the superior court of chancery; Hon. Charles Scott, chancellor.

The bill states, that the wife of the complainant David Garrison was formerly the widow of one Gaskins, and as such entitled to dower in his real estate; that she married one Henry Slavins in 1841, during which marriage she sold her dower interest in 1843, and with the money thereby received, purchased the slave in controversy, and took a bill of sale in the name of herself and her two children, complainants; that Slavins destroyed the bill of sale, and sold the slave to the defendant in 1846, under the pretence of mortgaging her; that Slavins died in 1849, and his widow married the complainant David Garrison. The bill prays for a decree for the slave, and an account for hire.

The answer admits the marriage of Slavins and complainant Dicey, alleges that the slave was in the possession of Henry Slavins, who claimed her, and exercised all acts of ownership and control of her, and that defendant, in good faith, purchased her for $450, and paid the same in cash, and received posses-

Garrison et al. *v.* Fisher.

sion of the slave, and took a bill of sale, and, as a measure of caution, required that both Slavins and his wife should join in it, and that it should be duly acknowledged by her, as in cases of conveyance of lands by married women.   He denies all notice of the complainant's rights, and claims to be a *bonâ fide* purchaser.   The bill of sale is in the following words : —

"Carroll county, Mississippi, January 30, 1846.

"Know all men by these presents, that Henry S. Slavins and Dicey Slavins, for and in consideration of four hundred and fifty dollars, to them in hand paid, hath bargained and sold unto Elias Fisher, a certain negro girl named Rebecca, aged about seventeen years, which negro we warrant to be sound, both in body and mind, and a slave for life.   Given under our hands and seal, the year and date above written.

"Henry S. Slavins.   [ L. S. ]

"Dicey + Slavins.   [ L. S. ]
her
mark.

"Personally appeared before me, acting justice of the peace, in and for the county of Carroll, Dicey Slavins, and being examined privately, states that she signed and sealed the above instrument uninfluenced in any way whatever.

"Lorenzo L. Martin, J. P."

The proof establishes the sale of the dower interest of Mrs. Slavins, and that the slave was purchased with the proceeds ; that the title was made to Mrs. Slavins and her children, for the purpose of preventing her husband from taking the slave from her and her children, or in any manner from disposing of the slave.   It is also proved, that when Mrs. Slavins received the money for her dower interest, she immediately handed it over to the person from whom she purchased the slave, in the year 1842.   Upon the hearing, the chancellor dismissed the bill ; from which decree, the complainants have taken this appeal.

*J. Shirly*, for appellants,
Cited and commented on the Act of Legis. 1846 (Hutch. Code, 498) ; *Lisloff* v. *Hart*, 3 Cushm. 245 ; Hutch. Code, 687 ; *Warren* v. *Brown*, 3 Cushm. 66.

30*

Garrison et al. *v.* Fisher.

*Sheppard,* for appellee,
In reply, cited *Baynton* v. *Finnall,* 4 S. & M. 193.

Mr. Justice HANDY delivered the opinion of the court.

The first question for consideration in this case is this, Did the purchase of the slave by Mrs. Slavins, with the money arising from the sale of her dower interest, vest the title to the slave in her husband?

It is shown, that the purchase was made by the means of the wife derived from her separate property. The money never came to the possession of the husband, but passed, immediately on the receipt of it by the wife, to the person from whom the slave was purchased. The husband incurred no responsibility on account of the sale of the dower interest, and did no act tending to show that he claimed any interest in the money. He must be presumed to have been aware of the purchase of the slave, and to have acquiesced in it. He might have had a right to the money had he chosen to exercise it. But he seems to have acquiesced in such a disposition of it by the wife as to continue the avails of it as her separate property, in the same manner as the property from which it was derived stood; and it seems that her separate property was simply changed from one form into another. This right necessarily results from the power of the wife, under the first section of the act of 1839, in relation to the rights of married women, to acquire "any property by direct bequest, demise, gift, purchase, or distribution," so that she has a perfect right to purchase property, subject only to the restriction, that it "does not come from her husband after coverture." Now, she could only purchase property by applying her separate estate, or the avails of it, to make the purchase; and to deny her that right would be to take away a power distinctly conferred by the statute. We think it, therefore, clear that a married woman may sell her separate property, in the mode required in the statute, for the purpose of purchasing other property, and when the proceeds are so applied, that the property thereby acquired becomes her separate property; and that this is especially true when the sale by her, on the one hand, and her purchase on the other, are parts of the same ob-

ject, and the money derived from the sale by her does not remain in her possession, or come under the control of her husband. It follows, from this view, that the slave here became the separate property of the wife.

The next question is, Did the bill of sale from Slavins and wife pass the title to the defendant? The 5th section of the act of 1839, above referred to, provides that the separate slave property of a *feme covert* may be sold by the joint deed of the husband and wife executed, proved, and recorded agreeably to the laws "in regard to the conveyance of the real estate of *femes covert*, and not otherwise." It has been repeatedly held by this court, that all other modes of conveying such property, since the passage of that act, are void; and it follows, that if the conveyance does not conform to the mode required in all respects, it does not convey the wife's separate property. Is this instrument, then, executed and proved agreeably to the laws regulating the conveyance of the real estate of *femes covert?*

The statute of 1822 provides, that no estate of a *feme covert* in lands shall pass by her deed, " without a previous acknowledgment made by her, on a private examination apart from her husband," before a competent officer, " that she signed, sealed, and delivered the same as her voluntary act and deed, freely, without any fear, threats, or compulsion of her husband." It is manifest that this instrument does not fill these requisitions. 1st, it does not show that the wife was examined " apart from her husband." This is the essential thing to her free and voluntary act which the statute requires to be made to appear, in order to destroy the presumption that the presence of the husband would tend to operate as a constraint upon the wife. The statute requires that this constraint should be shown not to exist, by providing that the act shall be done " apart from her husband." This must be shown positively and distinctly, and is not to depend on inference. The acknowledgment here shows that the wife was examined " privately," but it is impossible to say from that whether her husband was present or not, and the term does not necessarily exclude the possibility of the husband's presence. And although it may not be necessary to

employ the very terms used in the statute, it is not to be inferred that a thing expressly required by the statute to have been done, was done, unless it is substantially and clearly shown that it was done. 2d, it does not show that she acknowledged the delivery of the instrument. This is not only expressly required by the statute, but it is the act most essential to the validity of the deed, and without which it was of no effect. Although she signed and sealed it, her estate did not pass until she acknowledged that she delivered it as her act and deed.

It is clear, therefore, that this acknowledgment was not in conformity to the statute, and that it did not, for that reason, convey the slave to the defendant.

This conclusion may operate harshly upon the defendant, who claims to be a *bonâ fide* purchaser without notice. But it is nevertheless our duty to declare the law whenever it is manifest, without regard to the particular loss resulting from it. If, however, the rights of the parties depended upon whether the defendant was a *bonâ fide* purchaser without notice, it is by no means clear that he is entitled to occupy such a position, for it appears by his answer, though he claims to have purchased the slave from the husband as his absolute property, that he took the bill of sale from the husband and wife and undertook to have it acknowledged, which would have been unnecessary had the purchase been made from the husband alone; and this goes far to show that he had notice of the wife's claim.

The decree of the chancellor should have been in favor of the complainants, for the slave in controversy, and for an account of the hire, to be taken in the following manner. Inasmuch as the husband would have been entitled to the hire during his life, and the bill of sale was valid as to his interest in right of his wife, which was one third, the other two thirds belonging to the two children, the defendant is accountable for the amount of the hire from the time of sale to him, deducting therefrom one third of the amount for the husband's interest during his life, and extending to the time of filing this bill, one third of the amount of the hire to be decreed to the complainant's wife from the time of filing this bill, and two thirds to be decreed to the children from the time of the sale to the defendant.

The decree is reversed, and the case remanded, with directions to have an account stated, and acted upon, according to the principles above stated.