HENDERSON and MOORE et al. *v.* SARAH WARMACK et al.

At common law, property purchased by the wife with money of her own earning, became the absolute property of her husband; and this rule is not changed by the statute of 1839 relative to the rights of married women.

The first section of the act of 1839, enables a married woman to become pos-

Henderson and Moore et al. *v.* Warmack et al.

sessed of any description of property by purchase, and to hold the same as her separate property; "provided it does not come from her husband after coverture": — *Held*, that the rights of the husband at common law, are no further altered by the statute than the express terms of the act provide, or than may be necessary to enjoy the rights expressly conferred by that statute.

There being nothing in that act which either in express terms, or by necessary implication, has reference to money earned by the wife during coverture, such means as well as all purchases therewith vest in the husband.

*Garrison* v. *Fisher*, 26 Miss. R. 352, cited and explained by the court, and declared not applicable to the principles involved in this case.

In this case, complainants have a right to redeem the slave, from the facts stated in the bill, by complying with the terms of the mortgage; but M. being a purchaser without notice, no secret equity can be set up to deprive him of his purchase.

ON appeal from the superior court of chancery; Hon. Stephen Cocke, chancellor.

The facts are contained in the opinion.

*Yerger* and *Anderson* for appellants.

The question is, whether the slave thus purchased is her property or her husband's.

The act of 1839 says: "Any married woman may become seized or possessed of any property, real or personal, by direct bequest, demise, gift, purchase, or distribution, in her own name, and as of her own property, provided the same does not come from her husband after coverture."

By the law as it existed before this act, the money obtained by wife's labor or work belonged to her husband. The above slave being purchased by her with money thus made, it is evident it was made with the husband's money. The property is therefore his, so far as creditors and purchasers are concerned, unless he has the right to give it to her, and this the act itself negatives, for it says she may hold such property, provided it does not come to her from her husband after coverture. Now if it was his money, the slave comes from him, and this the act prohibits.

It is therefore manifest, the property in the slave being purchased with his money, it was his property, as to creditors and purchasers.

Does the act of 1839 alter the law? Does it give to a wife her own labor, or money derived for it? There is nothing of the kind in the act; the law, therefore, is the same. If the money had been her separate property, the purchase would be good, but as it was the husband's money, it is not.

*Tarpley* for appellees.

The 3d section of the act of 1839 provides, that when any married woman shall become entitled to or possessed of slaves by conveyance, gift, or otherwise, she shall hold them as provided for in the 2d section, that is, as her separate property, exempt from liability for the debts of the husband.

In the 1st section it is provided, that she may acquire property in the manner therein pointed out, provided the same does not come from her husband after coverture.

In this case it is contended, that as the slave was acquired by the labor of the wife, the proceeds of which belonged to the husband, that it was purchased with the funds of the husband.

But the sums of money, when added together, with which this negro was purchased, seem to have been donated to her at sundry times for her extra services as an overseer's wife. She acquired it by her labor, it is true, but in the absence of any contract, and from the very nature of such transactions, it could not have been otherwise than that, as she was an industrious, hard-working woman, who gave extra attention to the negroes, in the way of making their clothes, and nursing them when sick, the employers of her husband made her presents of money from time to time, which she laid by, until the sums amounted to enough to purchase a negro with. These funds did not belong to the husband, for the wife having acquired them either as a gift, or as compensation for services rendered gratuitously, and in the absence of any contract, which but amounts to a gift, she was authorized to hold the fund so acquired as her separate property, and to exchange it for any other species of property.

But place it upon the broad ground that, as a day laborer, Mrs. Warmack had acquired money, and laid it out in property. The proceeds of her labor belonged to the husband, and he

Henderson and Moore et al. *v.* Warmack et al.

might have possessed himself of them, but failing to do so, the wife could invest them in a separate estate.

The case of *Garrison and Wife* v. *Fisher*, decided at the present term of this' court,.lays down the following positions, which I take to be conclusive in this case.

1. When the purchase is made by the means of the wife derived from her separate estate, the money not having come into the possession of the husband, the property so purchased shall be considered the separate property of the wife.

2. If the husband was aware of the purchase of the slave, and acquiesced in it, notwithstanding he had a right to the money, had he chosen to exercise it, yet his acquiescence in the disposition made of it by the wife will render the avails of it her separate property.

These principles, if adhered to by the court, and they are founded upon the soundest principles of law and equity, must settle this case. It was intended by the legislature, in passing the act of 1839, to provide for the support of the wife in the event that the husband should become insolvent, by securing to her the property she might inherit or otherwise acquire in any mode except through the husband; and the provision made in the 1st section of the act, was to prevent a husband who was in debt from placing his effects in the hands of the wife, with which to acquire a separate estate, the proceeds of which he was entitled to receive by the same act. But where the husband was not in debt, where the money with which the property was purchased was acquired by the wife without his assistance, and invested by her with his concurrence, all of which transpired in this case, then the equity of the statute, the very reasons for which it was passed, demand that the wife should be entitled to hold the property.

Again; it is charged that the defendants received $450 out of· the $550 for which the negro was pledged, and that the remaining $100 was tendered them, and the negro demanded; and the objection comes from them with a poor grace, when, if the charges of the bill be true, they are attempting to get the negro for nothing, and thereby to defraud the true owner out of her.

70 *

*Tifft* on the same side.

Mr. Justice HANDY delivered the opinion of the court.

This was a bill filed in the superior court of chancery by a married woman and her husband for the recovery of a slave alleged to be the separate property of the wife. The substance of the bill is, that in the year 1845, the wife purchased the slave and took a bill of sale in her own name, and paid the purchase-money by means which she had acquired by her own labor, her husband being then free from debt, and the slave being recognized as her property. Afterwards, the husband, having contracted a debt to Henderson and Moore for about $550, took the slave, against the wife's consent, and executed a bill of sale therefor to them, absolute on its face, but with an express agreement between them, that it was made merely as a security of the debt, and that when the debt was paid, the slave should be returned. It is further stated that this debt was afterwards paid, except a balance of $100, and that this was tendered to Henderson and Moore and the slave demanded, but that they refused to deliver her up, saying that they had sold 'her to the defendant Montgomery, that they had the advantage in the matter, and intended to keep it. The bill prays for a decree for the delivery of the slave to the wife as her separate property, and for the payment of hire since the delivery of the slave to Henderson and Moore, and for general relief. The defendants, Henderson and Moore and Montgomery, filed a general demurrer to the bill, which was overruled; and from that order this appeal is taken.

The principal question is, whether the slave, under the circumstances stated in the bill, was the property of the husband, or the separate property of the wife.

There is no doubt but that, by the common law, the slave became the property of the husband; because, as the money received during coverture by the wife from her own earnings became the absolute property of the husband, the purchase by the wife was, therefore, in law, with the means of the husband. Bingh. on Inf. & Cov. 219; *Buckley* v. *Collin*, Salk. 114. This

rule is not changed by our statute of 1839 in relation to the protection of the rights of married women. The first section of that act enables a married woman to become possessed of any description of property by purchase, and to hold it as her separate property, " provided the same does not come from her husband after coverture." But the rights of the husband at common law are no further altered by this statute than the express terms of the act provide, or than may be necessary to enjoy the rights expressly conferred by it. There is nothing in the act which, either in express terms or by necessary implication, has reference to money earned by the wife during coverture; and such means would, therefore, remain the property of the husband, and a purchase made therewith by the wife would vest in the husband.

There is no analogy between this case and that of *Garrison* v. *Fisher*, 26 Miss. 352. That was a purchase by a married woman of one piece of property by means of another piece of property held by her as her separate estate; and the principle there held is, that it is to be regarded as a mere change of the form of her separate property into another form, which must still remain her separate property, and that such a case is embraced in the right to purchase secured to her under the first section of the act of 1839. But it is manifest that this case cannot come within that principle, because the means with which this purchase was made were in law the property of the husband, and her right to make the purchase is excluded by the rule of the common law, which is consistent with the proviso to the act above mentioned.

If the transaction, then, between the husband and Henderson and Moore had been one of absolute sale of the slave, their title would have been protected against the claim of the wife. But the bill alleges that the slave was delivered to them as a mere security for the debt of the husband, under an agreement to restore her upon the payment of the debt; and that this was afterwards tendered and refused. The demurrer admits these facts; so that the case as presented, in this respect, is a mere claim of a mortgagor to redeem; and if the facts stated in the bill be true, the complainants are certainly entitled to this right.

The demurrer of Henderson and Moore was therefore properly overruled.

But there is no equity shown against Montgomery. He was a purchaser, for aught that appears, without notice, from parties having possession and holding an absolute conveyance of the slave. Under such circumstances, the complainants could not set up their secret equity to deprive him of his purchase. The demurrer as to him was therefore improperly overruled. If it shall appear ·in ̓ the subsequent proceedings in the case, that Henderson and Moore held the slave under the agreement stated in the bill, the complainants will be entitled to relief against them for the value of the slave and of her hire, after accounting to them for the debt due them, and an account should be taken accordingly.

The decree is affirmed as to Henderson and Moore at their costs, and the case remanded for further proceedings.

FISHER, J., dissented, stating that he considered that the complainant had a good title to the slave in controversy.