# Shaeffer *et als. v.* Sheppard.

*Bill in Equity to charge Lands with reimbursing Moneys of Wife's Statutory Separate Estate, alleged to have been used in partly paying for Lands.*

1. *Marital rights of husband; by what, not affected.*—The common law marital right of the husband, to reduce to possession the wife's personalty and *choses in action,* attached before the passage of the statutes creating the wife's statutory separate estate, is not affected or divested by them ; and if he afterwards reduces such property to possession, it becomes his own.

2. *Statutory separate estate; what does not constitute.*—The income derived from keeping a boarding house, the home of the family, carried on in the name of the husband, and rented and paid for by him—the accounts for board being made out and collected in his name—is the husband's property, and not that of the wife, although she devotes her time and industry to the keeping of the house, and to the comfort and accommodation of those patronizing it.

APPEAL from Chancery Court of Chambers.

Tried before JAMES T. MAY, ESQ., a solicitor of the court.*

Appellee was complainant in the court below, and filed this bill against her husband, Shaeffer and his wife, seeking to have certain lots in Bluffton, Chambers county, sold, to reimburse her for moneys of her statutory separate estate, which had been used by her husband, with the knowledge of appellants, in partly paying for said lots on a purchase from Shaeffer and wife by her husband, on whose failure to pay in full the lands had been sold under decree in chancery for foreclosure of vender's lien, and purchased by Shaeffer's wife.

The answer denied that the money used by Mr. Sheppard was the statutory separate estate of the wife, and much proof was taken upon this and other points not material to the decision of the case, in the view which the court took of it.

It appears from the testimony that Mrs. Sheppard was, in the year 1841, married to her present husband, and in 1845 received certain property from the estate of her father, who died that year in St. Clair county, in this State; that she has been living with her husband ever since her marriage. She also inherited about the same time some property from an uncle. When the husband reduced the property to possession, does not clearly appear from the testimony. The

---

*Selected by the parties on account of the incompetency of the Chancellor.

weight of the testimony established that the money used by Mr. Sheppard in paying for the property, was the savings from a boarding house kept by the wife.

The chancellor granted the relief prayed, and hence this appeal.

E. G. RICHARDS & W. H. BARNES, for appellant.—The husband's rights to the inherited property attached, before the passage of the laws creating the statutory separate estate of the wife.—24 Ala. 386. Notice of the use of the trust funds, at the time they were used in the purchase, is not shown.— *Sheppard v. Shaeffer*, 45 Ala. 233. The money used was savings from keeping a boarding house, and that belonged to the husband.

C. D. HUDSON & G. W. GUNN, *contra*.—The equity of the bill has been declared by this court.—*Sheppard v. Shaeffer*, 45 Ala. 233. No *bona fide* purchasers have intervened here.—43 Ala. 685. The testimony shows that the appellants knew what funds were being used. The money used constituted the statutory separate estate of the wife.— *Glenn v. Glenn*, 47 Ala. See as to equity of bill, *Cowles v. Marks*, 47 Ala.

BRICKELL, C. J.—If it is conceded the bill contains equity, it rests on the allegations, that the money used by the husband of the appellee, in the purchase of the real estate, was her statutory separate estate. This fact is denied by the answers, and the evidence in the cause fully supports the denial. To the estate accruing to the appellee by inheritance from her father and uncle, the marital rights of her husband, as defined by the common law, had attached before the enactment of the statutes creating separate estates. It is not very clear whether these rights had been fully exercised by the husband, by a reduction to possession, of the property inherited, before the passage of the statutes. However this may be, the right of reduction was vested in the husband, prior to the statutes, and was not divested or affected by them.—*Kidd v. Montague*, 19 Ala. 619; *Manning v. Manning*, 24 Ala. 386; *Sterns v. Weathers*, 30 Ala. 712. If the money used by the husband in the purchase of the real estate was derived from this inheritance, it was his own money and not that of the wife.

The evidence shows clearly, as we think, that the money was not derived from the inheritance, but from the boarding house kept by the husband. The boarding house was the home of the family, and was kept in the name of the husband—the accounts were made in his name—the debts

[Henry et al., Ex'rs, v. Murphy & Co.]

due for board were collected by him—the house was rented by him, and the rents settled by him. Until the institution of this suit, there was no claim, or pretense of a claim, that the wife had any interest in, or claim to the proceeds of the house. It is true, it appears that she devoted her time and industry to the keeping of the house, and to the accommodation and comfort of those patronizing it. This was her duty, and confers on her no claim to its profits. The earnings of the wife are the property of the husband, the same as are his own earnings. She could with as much propriety lay claim to the fruits of his skill and industry, as to her own earnings.—1 Bish. Rights Married Women, § 732. The law has not as yet, so far separated husband and wife, that she can claim compensation for services rendered him in the household, and in providing for the family. The right to the boarding house and income, was the husband's, and if, as we think it clearly appears, the money paid by the husband on the purchase of the real estate, was derived from this source, it was his money, over which he had absolute dominion.

Without inquiring into the equity of the bill, if the fact was, as alleged, that the money paid by the husband was the statutory separate estate of the appellee, that fact being clearly disproved, the decree of the chancellor must be reversed, and a decree here rendered dismissing the bill, at the costs of the next friend of the appellee, in this court, and in the court of chancery.