SPENCER COLEMAN, Appellant, *v.* ISAAC C. BURR et al., Respondents.

The act of 1860 (Chap. 90, Laws of 1860), authorizing a married woman to carry on business and to perform labor "on her sole and separate account," did not absolve her from the duty to render to her husband such

services in his household as are commonly expected of a married woman in her station in life. Whatever services are thus rendered are not on " her sole and separate account," and in rendering them she still bears to him the common-law relation.

A wife, therefore, cannot make a contract with her husband, valid as against his creditors, for compensation for services rendered by her in the discharge of the duty she thus owes to him, or which he owes to another, an inmate of his family, where she receives no payment from the person for whom the services are rendered, and brings no money or property by her services to her husband.

In an action by a judgment creditor to set aside a conveyance by B., the judgment debtor, through a third person, to his wife, it appeared that prior to 1869 the mother of B. had conveyed to him certain lands upon his agreement to support her during life. In that year it was agreed between B. and his wife that she should care for and attend upon the mother. who had become helpless through paralysis, and that he should pay her therefor $5 per week. It was then supposed the mother would live but a short time. She did live. however, over eight years, and was cared for, according to the agreement, by Mrs. B. The referee found the contract to be fair, just and honest, and the compensation no more than reasonable for the services. In December, 1877, the conveyances in question were executed, the only consideration being the amount due under said agreement, the indebtedness upon which plaintiff's judgment was recovered was then incurred. *Held,* that the agreement was invalid and the conveyances void as against creditors.

It was claimed that as the statute (2 R. S. 137, § 4) declares that the question of fraudulent intent in such cases " shall be deemed to be a question of fact and not of law," and as the referee found the transaction fair and honest there was no fraud, *held* untenable; that the inference of fraud from the facts found was inevitable, and as matter of law the referee erred in giving judgment against plaintiff.

(Argued November 27, 1882 ; decided June 5, 1883.)

APPEAL from order of the General Term of the Supreme Court, in the fourth judicial department, made October 28, 1881, which reversed a judgment in favor of defendants and granted a new trial. (Reported below, 25 Hun, 239.)

The nature of the action and the material facts are stated in the opinion.

*H. D. Tucker* for appellant. The contract by Burr to compensate his wife for her services, and the services rendered on the faith of it, constituted a good consideration for the con-

veyance to her, and said conveyance vested a good title in her, as against Burr and his creditors, in the absence of actual fraud. (*Young* v. *Heermans,* 66 N. Y. 374, 381; 2 R. S. 137, § 4; *Dygert* v. *Remerschneider,* 32 N. Y. 629, 636, 637, 639; *Stoddard* v. *Whiting,* 46 id. 627; *Judson* v. *Dada,* 79 id. 373, 378; *Savage* v. *O'Neil,* 44 id. 298, 302; *Mason* v. *Dunbar,* 43 Mich. 407; *Tiemeyer* v. *Turnquist,* 85 N. Y. 516, 518, 519, 521; *Hill* v. *Grant,* 46 id. 496, 499; *Carman* v. *Pultz,* 21 id. 547, 551; *Meyer* v. *Lathrop,* 73 id. 315, 321; *Rider* v. *Powell,* 28 id. 310, 317; *Smith* v. *Coe,* 29 id. 366, 370; *Valentine* v. *Conner,* 40 id. 248, 254; *Donovan* v. *Sheridan,* 5 J. & S. 256; *Springer* v. *Dyer,* 50 N. Y. 19, 22; *Capron* v. *Thompson,* 86 id. 418, 421; *Tiemeyer* v. *Turnquist,* 85 id. 516, 518; *Callender* v. *Phelan,* 79 id. 366, 369, 370.) The contract by Burr with the wife, securing to her the fruits of her services, was valid. (Laws of 1860, p. 127, §§ 1, 2; 2 Story's Eq., §§ 1372, 1375; Laws of 1862, p. 344, § 7; *Adams* v. *Curtis,* 4 Lans. 164; *Tollman* v. *Shackelton,* 15 Mich. 447, 457; *Minier* v. *Minier,* 4 Lans. 421; *Brooks* v. *Schwerin,* 54 N. Y. 343; *Birkbeck* v. *Ackroyd,* 74 id. 356, 358.) The husband and wife, for all legal purposes, are no longer one person. (*Matteson* v. *N. Y. C. R. R. Co.,* 62 Barb. 373; *Meeker* v. *Wright,* 76 N. Y. 262, 267; *Reynolds* v. *Robinson,* 64 id. 589, 593; *Mason* v. *Dunbar,* 43 Mich. 407; *Peterson* v. *Mulford,* 36 N. J. 481.) A husband may contract with his wife for compensation for extraordinary services rendered in his household. (*Brooks* v. *Schwerin,* 54 N. Y. 343; Story's Eq. Jur., §§ 1367, 1368, 1385; *Reynolds* v. *Robinson,* 64 N. Y. 589; *Birkbeck* v. *Ackroyd,* 74 id. 356; *Cashman* v. *Henry,* 75 id. 112; *Peterson* v. *Mulford,* 36 N. J. 481, 487, 489; *Killman* v. *Skillman,* 2 Beas. 403; 2 McCarty, 479; *Stall* v. *Fulton,* 1 Vroom, 442; *Mason* v. *Dunbar,* 43 Mich. 40; *Shepard* v. *Shepard,* 7 Johns. 62; *Hunt* v. *Johnson,* 44 N. Y. 27; *Whittaker* v. *Whittaker,* 52 id. 368; *Glenny* v. *Stedwell,* 64 id. 123; *Edwards* v. *Davis,* 16 Johns. 281–285; *Power* v. *Leslie,* 23 N. Y. 527; *Dygert* v. *Remerschneider,* 32 id. 629; *Wright* v. *Wright,* 54 id. 327–

444; *Buckley* v. *Wells*, 33 id. 518; *Abbey* v. *Deyo*, 44 id. 343; *Whiton* v. *Snyder*, 88 id. 303.)

*Isaac S. Signor* for respondent. Services of the wife at common law belonged to her husband, and still belong to him, excepting such as are specially given to her by statute. (*Reynolds* v. *Robinson*, 64 N. Y. 593; *Bean* v. *Kiah*, 4 Hun, 171; *Cuck* v. *Quackenbush*, 13 id. 107; *Carpenter* v. *Weller*, 15 id. 134; *Filer* v. *N. Y. C. & H. R. R. R. Co.*, 49 id. 47.) These services are like those of a minor child, and while the husband or father may give the child or wife their time, and agree to pay them for services rendered him, such an agreement would not be valid as against creditors. (Reeves on Domestic Relations, 422; Clancy on Husband and Wife, 276, 277; *Cramer* v. *Rexford*, 2 C. E. Green, 367; *Swartz* v. *Hazlett*, 8 Cal. 118; *Brown* v. *McDonald*, 1 Hill's Ch. [S. C.] 306; *Belford* v. *Crane*, 1 C. E. Green, 265.) There was no consideration for the transfer even under the Married Woman Acts, as they have not changed the relation of husband and wife in such a manner as to affect this case. (*Brooks* v. *Schwerin*, 54 N. Y. 348; *Perkins* v. *Perkins*, 62 Barb. 531.) These statutes being in derogation of the common law are to be strictly construed. (Dwarris on Statutes [Am. ed.] 185.) These acts were not intended to relieve husband and wife of their mutual responsibilities and disabilities toward one another. (Laws of 1860, chap. 90, § 8, amended by Laws of 1862, chap. 172; *Little* v. *Willetts*, 37 How. 493; 10 Abb. [N. S.] 439.) The services were performed for the husband and are the same in that respect as if performed in taking care of himself or one of his children. (2 R. S. [6th ed.] 808.) Husband and wife could not, prior to these acts, nor can they now, enter into a legal contract, but could then and can now make only such contracts, as, though void at law, would be sustained in equity to the extent of the valuable consideration passing between them. (1 Blackstone's Com. 442; *Beach* v. *Beach*, 2 Hill, 260; *Savage* v. *O'Niel*, 42 Barb. 374; 44 N. Y. 298, 302; *White* v. *Wager*, 25 id.

328 ; *Knapp* v. *Smith*, 27 id. 277 ; *Buckly* v. *Wells*, 33 id. 518 ; *Gage* v. *Dauchy*, 34 id. 297 ; *Hunt* v. *Johnson*, 44 id. 27 ; *Foster* v. *Foster*, 5 Hun, 557 ; *Loser* v. *Ellis*, 13 id. 638 ; *Van Order* v. *Van Order*, 15 id. 16 ; *Kelly* v. *Crane*, 13 id. 474 ; *Perkins* v. *Perkins*, 62 Barb. 543 ; *Lord* v. *Parker*, 3 Allen, 129 ; *Lord* v. *Davison*, id. 131 ; *Turner* v. *Nye*, 7 id. 178 ; *Bassett* v. *Bassett*, 112 Mass. 109 ; *Edwards* v. *Stevens*, 3 Allen, 315 ; *Knowles* v. *Hall*, 99 Mass. 565 ; 103 id. 305 ; *Brooks* v. *Schwerin*, 54 N. Y. 348 ; *Birkbeck* v. *Ackroyd*, 74 id. 356 ; *Longendyke* v. *Longendyke*, 44 Barb. 369 ; *Freethy* v. *Freethy*, 42 id. 641 ; 41 Me. 409 ; *Whitney* v. *Whitney*, 49 Barb. 323). The statutes make no distinction between ordinary and extraordinary services. (Laws of 1880, chap. 472 ; 2 Kent's Com. [12th ed.] 13 ; *F. & M. N. B'k* v. *Gregory*, 49 Barb. 162 ; *Phipps* v. *Sedgwick*, 95 U. S. 9.) Services rendered by a wife for a husband, although extraordinary, afford no consideration for an agreement to pay money, or for a promissory note given therefor, even as against the heirs at law of the husband. (*Whitaker* v. *Whitaker*, 52 N. Y. 360.) The deed is void as it attempts to appropriate the debtor's property for the use of his wife to satisfy an alleged claim in her favor, which she could not have collected from him, either at law or in equity, at a time when such a deed was fraudulent as against creditors. (*Plank* v. *Schemerhorn*, 3 Barb. Ch. 644.) An equity that will support a conveyance against creditors void or defective in law must be founded on such a consideration as will sustain a valid promise and make it a legal obligation. (4 Dall. 304, note 1 ; *Shepherd* v. *Shepherd*, 7 Johns. Ch. 57 ; *Simmons* v. *Simmons*, 26 Barb. 419.) The findings of the referee, if the consideration was void, are equivalent to a finding of fraud. (Bump on Fraud, 22, 24, 272, 278 ; 11 Wend. 240 ; *Edyell* v. *Hart*, 9 N. Y. 213 ; 24 id. 359, 623, 632.)

EARL, J. This action was brought to set aside a deed of sixty-two acres of land, made by the defendant Isaac C. Burr, to Franklin P. Smith, and by him to Ellen A. Burr, the wife of Isaac, on the ground that the deeds were made with intent

to hinder, delay and defraud the creditors of Isaac, of whom the plaintiff was one. The facts, as they appear from the findings of the referee, upon which alone this appeal is based, are as follows: In the year 1869, the defendant Isaac lived upon the land conveyed, and had a family consisting of himself, his wife, the defendant Ellen, two children of his wife by a former husband, his two children by his wife Ellen, and his mother, who lived in a part of his house and whom he had engaged to support in consideration of a conveyance by her to him of twenty-six of the sixty-two acres of land. His mother was about eighty years of age, and in the month of January of that year she had an attack of paralysis which rendered her partially helpless. She had another attack in the month of February, and still another in the month of April, which substantially rendered her helpless. After the last attack she could not walk or feed herself for a year or more. The care of her devolved mainly upon Mrs. Burr, and her services in such care were onerous, exacting and disagreeable. Soon after the last attack it was considered in the family that it would be a most unpleasant and disagreeable duty to take charge of the mother, and provide for and administer to all her wants in her helpless condition, and it was agreed between Mr. Burr and his wife that if she would undertake to discharge such duty she would be paid by him for her labor and services the sum of five dollars a week, which, in view of the very irksome, laborious and disgustful duty she performed during the residue of the life of the mother, was no more than a fair and reasonable compensation for such labor and services. The mother lived after the last attack of paralysis, and after this agreement was made, eight years and four months, and the compensation agreed upon amounted to $2,175.

The referee found that the contract between Mr. and Mrs. Burr was a fair, just and honest one, made at a time when there was little expectation on their part that the life of the mother would be so greatly prolonged, considering her advanced age, her disease and helpless condition. For the purpose of paying the sum which it was claimed thus became due to his

wife on the 29th day of December, 1877, Isaac and his wife conveyed the sixty-two acres of land to the defendant Smith for the nominal consideration of $1.00, and on the same day Smith executed and delivered a deed of the same land to the wife for the same nominal consideration. The deeds were both delivered at their date, and acknowledged and recorded. Prior to the execution of these deeds Isaac C. Burr was indebted in the various sums mentioned in the complaint, for which, before the commencement of this action, judgments had been obtained against him, upon which executions had been issued and returned unsatisfied.

The referee decided that, as matter of law, the contract established by the proof between the husband and wife, indicated a clear and explicit election on her part, with his consent, to render the labor and services performed by her as nurse, in taking care of her husband's mother in her sickness, on her sole and separate account, and to claim the fruits of her labor and services for herself, and showed her intention to avail herself of the privilege conferred upon her by the statute; and that the agreement on the part of her husband to pay her for such services was an abandonment on his part of his marital rights to claim or require such services and labor, and created a valid contract in law, and gave her a right to the stipulated price and value of her services which constituted them, or the amount due her for such services, a valid debt against her husband, which was sufficient in law and equity to form the consideration for the deed executed to her as before stated; and he decided that the deeds were not fraudulent and void, and that the complaint should be dismissed.

The sole question for our determination now is, whether the conveyance of the land to Mrs. Burr is sustained by a consideration good as against the creditors of the husband. It must be conceded that the contract between the wife and the husband, in reference to these services, would, at common law, have been void, as she could make no contract with her husband, and her services, whether rendered in her husband's family or elsewhere, absolutely belonged to him. (*Gerry* v. *Gerry*, 11

Gray, 381; *Cramer* v. *Reford*, 17 N. J. Eq. 367; *Hender-son* v. *Warmack*, 27 Miss. 830; *Shaeffer* v. *Sheppard*, 54 Ala. 244; *Glaze* v. *Blake*, 56 id. 379; *Duncan* v. *Roselle*, 15 Iowa, 501; *Hay* v. *Hayes*, 56 Ill. 342; Kelly's Contracts of Married Women, 153; Schouler on Husband and Wife §§ 294, 296.) But modern legislation in this State has enlarged the powers of married women. By the acts of 1848 and 1849, for the protection of the property of married women, a husband was deprived of that right to and control of his wife's property which the common law gave him. The purpose of those acts was to protect married women against unkind, thriftless, or profligate husbands, by securing to them the separate and independent control of all their own property. But those acts went no further.

By chapter 90 of the Laws of 1860, still further protection was given to married women, and a wife was authorized to carry on any trade or business, and to perform any labor or services on her sole and separate account, and her earnings from her trade, business, labor, or services thus carried on or performed were declared to be her sole and separate property. It was the purpose of those provisions to secure to a married woman, free from the control of her husband, the earnings and profits of her own business and of her own labor and services, carried on or performed on her sole and separate account, which at common law would have belonged to her husband. It was not their purpose, however, to absolve a married woman from the duties which she owes to her husband, to render him service in his household, to care for him and their common children with dutiful affection when he or they need her care, and to render all the services in her household which are commonly expected of a married woman, according to her station in life. Nor was it the purpose of the statute to absolve her from due obedience and submission to her husband as head and master of his household, or to depose him from the headship of his family, which the common law gave him. He still remains liable to support and protect his wife and responsible to society for the good order and decency of his household. He is to

determine where he and his family shall have a domicile, how his household shall be regulated and managed, and who shall be members of his family. The statutes referred to touch a married woman in her relations to her husband only so far as they relate to her separate property and business, and the labor she may perform on her sole and separate account. In other respects the duties and responsibilities of each to the other remain as they were at common law.

Prior to 1860 it was never heard of, as a mischief to be remedied by legislation, that a wife could not earn money on her own account from her husband; that she could not demand pay from him for services rendered in his household; that she could not contract with him for services to be rendered for him, and the statute of that year above referred to was not enacted to remedy such a mischief. Married women frequently carried on business and thus earned money, and they frequently labored for others not members of their family and earned money, and all their earnings from their business or labor, at common law, belonged to their husbands. This was considered a hardship, and it was the purpose of the law to change this common-law rule and to secure these earnings to the wife, and the law-makers could have had no other end in view.

Whatever services a wife renders in her home for her husband cannot be on her sole and separate account. They are rendered on her husband's account in the discharge of a duty which she owes him or his family, or in the discharge of a duty which he owes to the members of his household.

It would operate disastrously upon domestic life and breed discord and mischief if the wife could contract with her husband for the payment of services to be rendered for him in his home; if she could exact compensation for services, disagreeable or otherwise, rendered to members of his family; if she could sue him upon such contracts and establish them upon the disputed and conflicting testimony of the members of the household. To allow such contracts would degrade the wife by making her a menial and a servant in the home where she should discharge marital duties in loving and devoted ministra-

tions, and frauds upon creditors would be greatly facilitated, as the wife could frequently absorb all her husband's property in the payment of her services, rendered under such secret, unknown contracts.

A few cases may be referred to for illustration. In *Grant* v. *Green* (41 Iowa, 88), it was held that a contract between the guardian of an insane husband, and the wife, that the latter should care for the husband and receive a certain sum for her services, was without consideration and void, because she owed the service independently of any contract. It was stated by the judge writing the opinion that "the service was such an one as she owed her husband by virtue of the relation existing between them. She had no right to refuse to perform it, nor to demand compensation for performing it." In *Filer* v. *N. Y. Central R. R. Co.* (49 N. Y. 47; 10 Am. Rep. 327), it was held that the services and earnings of the wife belong to her husband, unless she is carrying on a trade or business, or performing labor or services on her sole and separate account, and that, in an action to recover damages for a personal injury, he, and not she, is entitled to recover consequential damages from her inability to labor. In *Brooks* v. *Schwerin* (54 N. Y. 343), it was held that under the law of 1860, "the services of the wife in the household in the discharge of her domestic duties still belong to the husband, and in rendering such service, she still bears to him the common-law relation. So far as she is injured so as to be disabled to perform such service for her husband, the loss is his, and not hers, and for such loss or service, he, and not she, can recover of the wrong-doer. But when she labors for another, her service no longer belongs to he husband, and whatever she earns in such service belongs to her as if she were a *feme sole*, and so far as she is disabled to perform such service by any injury to her person, she can, in her own name, recover compensation against the wrong-doer for such disability, as one of the consequences of the injury." In *Reynolds* v. *Robinson* (64 N. Y. 589), an action was brought by the husband to recover for services rendered by his wife to a boarder sick with a cancer, in his house, and

it was held that he could recover. In that case it was said, "she was engaged in no business or service on her own account. She was in charge of his household, and as part of her household duties, rendered the service to a person in her husband's house, by contract with him. She was then working for her husband, and not for herself or on her own separate account. Notwithstanding the act chapter 90, Laws of 1860, she could still work for her husband, she could devote all her time and service to him, and the circumstances of this case are such as to warrant the finding of the referee that the services were rendered by him through her," that "if the husband takes boarders into his house, or converts his house into an hospital for the sick, and his wife takes charge of his establishment, and thus aids him in carrying on his business, in the absence of special proof, all her services and earnings belong to her husband. Even under such circumstances the husband might covenant and agree that his wife should receive pay for her services on her own account; but in the absence of some agreement to that effect, the inference of law and fact would be that she was working for her husband in the discharge of her marital duties." It was not intended by any thing that was said in that case to intimate that a wife could demand payment from her husband for any services rendered under the circumstances mentioned in that case; but that with his consent she could demand and receive, and hold to her separate use, payment from the persons thus taken into his house, for any services she there rendered to them in taking care of and nursing them. In *Whitaker* v. *Whitaker* (52 N. Y. 368; 11 Am. Rep. 711), the facts were that on the 20th of August, 1868, the husband gave his wife a note for $4,000, the only consideration of which was that the wife, aside from her household duties, had aided in the out-of-door work on her husband's farm, and that the husband gave it to her for the purpose of providing for her support and maintenance; that on the 6th of November, 1869, the husband died, and that after his death she presented this note as a claim against his estate; and it was held that she could not recover. It was said in the opinion that to uphold

notes given under such circumstances would be likely to lead to the perpetration of frauds; that "if a wife can be said to be entitled to higher consideration or compensation because she labors in the field instead of in her household, the law makes no such distinction. It never has recognized the right to compensation from her husband on account of the peculiar character of her services. In most cases she probably contributes more to the happiness of her family by the proper discharge of the delicate and responsible duties of her household, than by any outside labors, however arduous. It is clear that the law regards neither as any consideration. for a promise founded thereon, by the husband." In *Birkbeck* v. *Ackroyd*, (74 N. Y. 357; 30 Am. Rep. 304), it was held that the act of 1860 does not wholly abrogate the rule of the common law entitling the husband to the services and earnings of the wife; that she may still allow him to claim and appropriate the fruits of her labor, and in the absence of an election on her part to labor on her account, or of circumstances showing her intention to avail herself of the privilege conferred by the statute, the husband's common-law right is unaffected; that therefore where the husband and wife are living together, and mutually engaged in providing for the support of themselves and their family, and there is nothing to indicate an intention on the part of the wife to separate her earnings, the husband may maintain an action in his own name to recover them.

It will be perceived that none of these cases are precisely in point; but they lay down principles which throw some light upon this case. It is not claimed that any case can be found in this State, or elsewhere, which decides that a married woman can enforce a contract made with her husband for the payment for services rendered by her for him in his household; and as we understand it is not claimed in this case that if these services had been rendered in nursing and caring for the husband, or for any of the children of the husband and wife, a contract to pay for such services would have had any consideration to rest upon, or that the wife could have retained property conveyed to her in payment of such services against

creditors pursuing the same. But it is sought to make a distinction between such services of the wife and those which she renders for one not strictly a member of the husband's family. Such a distinction does not stand upon principle. A line drawn there would be merely an arbitrary one. While the wife cannot demand or receive payment as against creditors for services rendered in the care of her husband and children, can it upon principle be said that she can demand and receive payment for every service she renders in caring for visitors, from time to time, in her husband's house upon his invitation? Whenever she aids him in the discharge of a duty which he owes to an inmate of his house, who is yet not strictly a member of his family, can she stipulate for compensation? Whenever she nurses in sickness, one of his children of a former marriage, a member of his family, can she lawfully demand a share of his property for her services? But in this case the mother was properly part of the household. The husband was under a natural, legal and contract obligation to support her. It would have shocked the moral sense of every right-minded person, if he had not supported her in his own household where she could have the tender care, suitable to her age and feeble condition, of her son and his wife and her grandchildren. He was under just as much natural, legal and moral obligation to support his mother as he was to support his own children. When, therefore, the wife rendered service in caring for her, she was engaged in discharging a duty which her husband owed his mother, and precisely the same kind of duty which he owed to his children and to his wife. In discharging that duty she earned no money, she brought no increase to her husband's property and no income into the family. The services were rendered simply in the discharge of a duty which the husband owed to his mother, and in rendering them she simply discharged a marital duty which she owed to him. To hold that she could charge for services thus rendered, and not for services rendered in the care of her husband and children, would make an arbitrary distinction, resting, as we have before intimated, upon no principle.

In construing the statutes referred to, we must constantly keep in mind the objects which were to be attained, and the mischiefs which were to be remedied by them, and not adhere too closely to the precise language used. Section 7 of the statute of 1860 provides that any married woman may bring and maintain an action in her own name against any person for any injury to her person or character; and yet we have held that she could not sue her husband for an injury to her person; and it was held in the case of *Filer* v. *The Railroad Co.* that unless, at the time, she was carrying on business, or rendering service on her sole and separate account, her inability to labor could not form an element of damages to be recovered in a case where she had been injured, although the statute provided that she could bring the action the same as if she were sole.

Whether or not a wife will do business or render service on her sole and separate account depends upon her election, and not upon her husband's consent. Shall we so construe the acts referred to that a married woman may make her husband her debtor every time she renders a service in his home to one lawfully there, but not strictly within the narrow circle of a normal family consisting of herself, her husband and children? Such a construction would enable a married woman to absorb her husband's property before he knew it, and certainly before his creditors knew it. And no case can furnish a more forcible illustration than this. Here, the wife during the eight years and four months, it must be presumed, received from her husband a home, shelter, food, raiment and, if needed, medical attendance, and yet, at the end of the time, she had over $2,000 in property taken from him, and he nothing but clamorous creditors. This is a degree of thrift which attends the labor of few men or women.

A married woman owes no duty to her husband to go out of his house and render service for persons not members of his family, and she owes him no duty to carry on any business in his house or elsewhere for the purpose of earning money for him, and the purpose of the statute is fully accomplished if she

be permitted to retain as her own, money or property obtained by her in such business or by the rendition of such services. But when she renders service in the household in the discharge of a duty which she owes to her husband, or which he owes to another, an inmate of his family, and receives no payment from the person to whom the service is rendered, and is entitled to receive none, and brings no money or property by her service, to her husband, she cannot stipulate with him for compensation from him, and the services thus rendered are not under the protection of the statute of 1860. Thus we have a plain, clear rule, easily applied, which will secure the remedy aimed at by the statutes, without any embarrassing or disastrous consequences.

It is true that these services of the wife were onerous and disagreeable; so they would have been if similar services had been rendered for a sick husband or a sick child. Her condition would have been still more unfortunate if she had been the invalid, and the husband or his mother had been called upon to perform similar onerous and disagreeable duties in caring for her.

Before closing this opinion one more point must be noticed. The statute (2 R. S. 137, § 4) provides that the question of fraudulent intent in cases of this character " shall be deemed a question of fact and not of law "; and the claim is made that here there is no finding by the referee of a fraudulent intent; but that on the contrary he has found the whole transaction to be fair and honest. He has, however, found facts from which the inference of fraud is inevitable, and although he has characterized the transactions as honest and fair, that does not make them innocent nor change their essential character in the eye of the law. Mr. Burr must be deemed to have intended the natural and inevitable consequence of his acts, and that was to hinder, delay and defraud his creditors. (Bump on Fraud. Conv. [3d ed.] 22, 24, 272, 278 ; *Cunningham* v. *Freeborn*, 11 Wend. 241 ; *Edgell* v. *Hart*, 9 N. Y. 213 ; *Ford* v. *Williams*, 24 id. 359 ; *Babcock* v. *Eckler*, id. 623–632.)

Upon the essential facts found the judgment should have been

in favor of the plaintiff, and hence the referee erred as matter of law in giving judgment against him ; and the General Term was right when as matter of law it reversed his judgment.

We are, therefore, of opinion that the order of the General Term should be affirmed and judgment absolute should be rendered against the defendants, with costs.

All concur, except DANFORTH and FINCH, JJ., dissenting.

Order affirmed and judgment accordingly.