CATTARAUGUS COUNTY.—HON. ALFRED SPRING, SUR-
ROGATE.—June, 1887.

## MATTER OF REUTER.

*In the matter of the estate of* AUGUSTUS REUTER,
*deceased.*

Notwithstanding the passage of the married women's acts, husband and
wife remain generally, in legal contemplation, one, and can contract
with one another only in matters appertaining to, and when necessary
for the protection of, the separate estate of the latter.

Upon the judicial settlement of the account of the widow, and administra-
trix of the estate, of decedent, who was a cheesemaker by occupation,
the former presented a claim for services rendered by her in working
with decedent at his business, and proved a promise by him to pay her
therefor.—

*Held,* that the claim in question was not enforceable either at common
law, or under the statutes of this State; and that the same should be
disallowed.

HEARING of objections interposed by next of kin of
decedent, to account filed by administratrix, in pro-
ceedings for judicial settlement.

LAIDLAW & McNAIR, *for widow.*

W. H. TICKNOR, *for next of kin.*

THE SURROGATE.—Augustus Reuter died without
issue, but left him surviving his widow. He was a
cheesemaker by vocation, and his wife worked with
him at that business. She presents a claim for the
services so rendered, predicated upon a promise by
him to pay her therefor. The evidence fairly shows
that the decedent made such promises, and the only

question is as to her legal right to enforce a claim of this kind.

Of course, at common law, no such claim could be made (1 Blacks. Comm. [Sharswood], 442 ; 2 Kent's Comm., 129).   In the various statutes, passed since 1848 in our State, extending the rights of a married woman over her property, and also increasing her liability for the acts affecting her property, I do not find that she has been vested with any right to contract with her husband, unless the contract directly pertains to her separate estate.   These statutes have frequently received a construction adverse to that of the claimant in this proceeding.   In Whitaker v. Whitaker (52 *N. Y.*, 368), the husband gave to his wife his promissory note for $4,000, for services performed by her in doing out-of-door work upon his farm.   The note was proved by his widow against his estate, and allowed by the Surrogate, although under the objection of the collateral next of kin.   The Court of Appeals reversed the decree of the Surrogate.   At page 371, Judge RAPALLO, in giving the opinion of the court, says : " If a wife can be said to be entitled to higher consideration or compensation because she labors in the field, instead of in her household (which I do not perceive and cannot admit), the law makes no such distinction.   It has never recognized the right to compensation from her husband on account of the peculiar character of her services.   In most cases, she probably contributes more to the happiness of her family by the proper discharge of the delicate and responsible duties of her household, than by any outside labors, however ardu-

ous. It is clear that the law regards neither as any consideration for a promise, founded thereon, from her husband."

In Coleman v. Burr (93 *N. Y.*, 17), the wife had taken care of the paralytic mother of her husband, upon his explicit promise to pay her therefor. The Court of Appeals, in deciding such a claim could not be sustained against the husband, say, at page 25: "It would operate disastrously upon domestic life, and breed discord and mischief, if the wife could contract with her husband for the payment of services to be rendered for him in his home; if she could exact compensation for services, disagreeable or otherwise, rendered to members of his family; if she could sue him upon such contracts, and establish them upon the disputed and conflicting testimony of the members of the household." See also pages 28 and 29.

The following cases are in the same line: Bertles v. Nunan (92 *N. Y.*, 158); Fairlee v. Bloomingdale (67 *How. Pr.*, 292); Kaufman v. Schoeffel (37 *Hun*, 140); Noel v. Kinney (15 *Abb. N. C.*, 403); Barnett v. Harshbarger (5 *N. E. Rep.*, 718); Kniel v. Egleston (4 *N. E. Rep.*, 573); 1 Bishop, Mar. Wom., 35. These cases, while giving a fairly liberal interpretation to these statutes, and the rights and obligations of married women thereunder, still hold uniformly to the doctrine that, in legal contemplation, the husband and wife are still one, and, as between themselves, can only make such contracts as are necessary to protect her separate estate.

In each of the cases of Benedict v. Driggs (34 *Hun*, 94); Granger v. Granger (2 *State Rep.*, 211); and

Fairbanks v. Mothersell (60 *Barb.*, 406), it pointedly appeared that the wife was possessed of a separate estate, and the acts there upheld were those especially relating to this estate. In the case under consideration, the husband was a cheesemaker, and the wife very naturally aided him in carrying on this business during the cheesemaking season, so that the case is not distinguishable from Whitaker v. Whitaker (*supra*).

If every service rendered by a wife for her husband outside of the household duties, strictly considered, can be made the basis of a charge against the husband's estate, it will practically abolish the making of wills by married men, for the wife can very easily absorb the estate in claims of this kind. Every hastily put admission, every statement made by the husband in commendation of his wife's services, would be tortured into an intention to compensate her for work really inseparably connected with the marital relation. The temptation to perpetrate fraud in the presentation of claims of this kind would be too patent and too available to be resisted. The widow who imagined she was wronged, by the disposition of her husband's property in accordance with the statutes of distribution or of descent, or by his will, would be very liable to seek what she would term "her rights" by claims for unusual services rendered her husband. A construction of these statutes permitting the enforcement of claims of this character would injure instead of benefiting married women, in that it would weaken the marriage relation, and foment domestic turmoil. The common law unity

of the husband and wife, the disabilities incident to the marriage contract, so far as they affect dealings between themselves during coverture should be encroached upon with exceeding care.

The claim in this case should be disallowed, and I direct that an order be entered, accordingly.