Hatch, J.
The question which is here presented for determination is, can the husband and wife, by contract between themselves, change the rights, liabilities and obligations which inhere to the marital relation. It is clear that no such power existed at common law. Beach v. Beach, 2 Hill, 260; Sharswood’s-Blackstone’s Commentaries, vol. 1, pp. 441, 442; Kent’s Com. (12th ed.), vol. 2, p. 129.
Among the liabilities thus created by the marital relation, always existing, and which still exists, is the obligation resting upon the husband to support and maintain the wife, and this without regard to whether the wife is possessed of a sole and separate estate or not. Kent’s Com. (12th ed.), vol. 2, p. 146; Maxon v. Scott, 55 N. Y., 247-249; 62 Barb., 531; Coleman v. Burr, 93 N. Y,, 17, 24.
The unity of the husband and wife has not been destroyed by the several acts which have been passed, removing very largely her common law disabilities, except so far as the statutes expressly provide. Accordingly it has been held that a deed running directly from the wife to the husband was ineffectual to pass title. Wager v. White, 25 N. Y., 328.
*406 That by conveyance of land to the husband and wife, their heirs and assigns each became seized of. the entirety. Bertles v. Nunan, 92 N. Y., 152.
That the husband and wife are not authorized to form a copartnership for the purpose of trade or business. Kaufman v Schoeffel, 37 Hun, 140.
These authorities clearly show, that only to the extent to which the common law disabilities have been removed, may the husband and wife contract. The intent, of the legislature to still retain the oneness of the husband and wife, is made more manifest by the most recent legislation, as the statute of 1884 removed all disabilities with respect to contracts made by the wife, except contracts between husband and wife, which were expressly excepted. The obligation resting upon the husband to support and maintain a wife, not having been modified or abrogated by any statute, it follows that no legal contract, with the wife, can be entered into which will relieve him from such obligation. Nash v. Mitchell, 71 N. Y., 199; Perkins v. Perkins, 7 Lans., 19.
It is claimed however that the several acts, so far as the same relate to the separate estate of the wife, have removed all disability with respect to her dealings therewith; and that this contract relating alone to the management of her sole and separate property, and in her sole and separate business, can be upheld for the reason that she may do with such property as she sees fit. It is no longer open to debate, that a married woman, by virtue of the enabling statutes, may carry on a sole and separate business, is entitled to all the benefits arising therefrom, and subject to all the liabilities attaching thereto. She may transact business in person, or through an agent, and she may employ her husband to act for her as such agent. Knapp v. Smith, 27 N. Y., 277; Abbey v. Deyo, 44 id., 343; Owen v. Cawley, 36 id., 600; Baum v. Mullen, 47 id., 577.
So far as her separate estate is concerned, she has the power to dispose of it for any legal purpose, to the fullest extent to which any other person has. In this respect the statutes have swept away the common law disability. Tiemeyer v. Turnquist, 85 N. Y., 516; Buckley v. Wells, 33 N. Y., 518.
Such right, however, to acquire and use property, carries with it corresponding and correlative obligations. As she can purchase property, so the obligation is imposed to pay. Cashman v. Henry, 75 N. Y., 103.
Where she transacts business through an agent, she is estopped by his acts, where doing the act in person, she would be estopped. Noel v. Kinney, 106 N. Y., 74; Bodine v. Killeen, 53 N. Y., 93.
*407 She is liable for the frauds of the husband perpetrated in the management of her estate, although without knowledge of the fraud, and acting innocently. Warner v. Warren, 46 N. Y., 228; Krumm v. Beach, 96 N. Y., 398.
The cases are uniform in holding, that her right to deal with property as if unmarried, attaches to it all of the incidents and obligations that attach to like rights exercised by other persons. The authorities which hold that she may use, consume, keep, give away, or sell property of which she is possessed, do not hold, or say, that she may so use it if she thereby deprives or defrauds another of what she is legally under obligations to render. The sense in which such language must be understood, is that she may so use. her property, when such use does not thereby deprive others of what is their due, and she is untramelled by obligations which good faith requires to be discharged; she may not then give away, destroy, consume or keep property which she has acquired.
Her disabilities removed she drops into the category of legal responsibility; she may no more commit a fraud in the disposition of her property than her husband can in the disposition of his property ; what will taint his transaction will equally tarnish hers. This right, therefore, which the statutes have conferred upon her, do not authorize her to make illegal contracts, nor do they dispense with any requirement which the law imposes, with respect to the ownership of property. So that it is not accurate to say that she may deal with hei property as she sees fit, or consume it in the payment of what the husband is legally liable to pay, if thereby the rights of creditors are affected. It is, however, claimed that, if this contract to pay the household expenses could not be enforced, yet, it not being a contract, malum in se, having been executed, it cannot now be attacked. It may be conceded for present purposes that, as between the parties, the wife having received the benefit of the husband’s services, could not recover back from him what she had paid as family expenses, and this upon the principle of estoppel. He was not bound to work for her in the management of her separate business, but having done so upon her agreement to relieve him from a marital obligation, the law would not allow her to repudiate the contract after having received the benefits. But such is not the exact case here; while the wife may not take advantage of the executed void agreement, creditors who are prejudiced thereby, may. They had the right to assume, when dealing with the defendant, that her property would not be absorbed by the husband in right of any void agreement, or that her property would be used in the payment of obligations legally resting upon the husband to *408 pay, while he at the same time exhausted her estate by accumulating salary. Such dealing misleads the creditor,, and opens wide the door for perpetrating the grossest frauds. I understand this to be m part the principle which controlled the decision in Coleman v. Burr (93 N. Y., 17), and Whitaker v. Whitaker (52 N. Y. 378).
The husband could no more contract to be relieved from supporting his wife and family here, than the wife could contract for payment for service which she was bound to -render in the Buri case; in both, the agreement was in fraud of the rights of creditors.
It was conceded, and the referee found, upon the trial that, the services of the husband in carrying on this business-were fairly and reasonably worth the sum of $1,600. The inference which arises from such concession and finding is, that they were worth no more than that sum. It was further conceded and found that, the reasonable and proper living expenses of the family, were from $2,000 to $2,500 a year. Thus we have the husband receiving compensation at the rate of from $3,600 to $4,100 a year, for services concededly worth but $1,600 a year. Seven years of such method equals an assignment, and we have as a final result, household expenses, or more accurately speaking, obligations of the husband, paid by the wife, from $14,000 to> $17,500; paid upon salary, $2,031.38; making a total paid of from $16,031.38 to $19,531.38, to which must be added balance of salary remaining unpaid, amounting to the sum of $9,168.62, making a grand total, which the husband became entitled to receive for his seven years service of from $25,200 to $28,700, and thus for services confessedly worth but $11,200. Although the balance remaining unpaid, was; $9,168.62, the husband is only found preferred for $7,000. Nothing more is needed to show the fraudulent character of such an assignment, either as an inference created by law, or as a matter of fact. Coleman v. Burr, supra, 31.
The longer such a contract was executed the more deplorable becomes the condition of the creditors. Good faith and fair dealing towards them require that the husband shall be chargeable with what he was legally under obligation to pay. With this done, there remains no debt to prefer. We therefore think, the referee right in deciding this assignment fraudulent and void, as hindering, delaying and defrauding creditors. There was no error committed in the admission of the judgment-rolls in evidence.
They were proper as showing the insolvency of Mrs. Guenther at and previous to the making of the assignment and while she was paying the living expenses of her husband’s family. So far as the admissions contained in the answer are concerned, if we treat them as technically inad *409 missible, they in no wise injured or prejudiced the defendants, as Mrs. Guenther and her husband on behalf of the defendants testified to substantially the same facts as matter of defense. Bardin v. Stevenson, 75 N. Y.‘167; Foote v. Beecher, 78 id., 165.
The same is true of the books kept by the firm prior to Mrs. Guenther’s succession to the business. They were admissible as showing generally the condition of the business at the time of the transfer.
It is also claimed that E. N. Cook & Co., through whom the plaintiff makes title to the judgment against Georgiana J. Guenther, and which forms in part the basis of right to maintain this action, had ratified and confirmed said assignment, and in consequence thereof the plaintiff is estopped from maintaining this action. The facts relied upon to sustain this position are found in the testimony of the assignee. Cook & Co. were preferred creditors in the assignment, and when the attachments were granted they consulted with the assignee relative to the motions which were made to vacate them, and also with respect to the appeal which was taken from the order denying the motion to vacate. They also contributed money towards the expense of printing papers on appeal; they were not, however, parties to the motion, nor was the motion made in their behalf. It does not appear that they were possessed of any facts showing or tending to show fraud in the preference of John G. Guenther. There could be no ratification without knowledge, and consequently no estoppel. Brown. v. Goodwin, 75 N. Y., 409; Royce v, Watrous, 73 id., 597.
It does not appear that the acts of Cook & Co. have in any manner changed the status of the parties by misleading them or otherwise. The case lacks the essential elements necessary to create an estoppel. Constant v. American Baptist Society, 53 Sup. Ct. (J. & S.), 170; White v. Ashton, 51 N. Y., 280; Haydock v. Coope, 53 id., 68.
We find no error in the determination of the referee. The judgment appealed from should therefore be affirmed, with costs.
Beckwith, Ch. J., concurs; Titus, J., dissents.