Selden, J.,
 

 delivered the opinion of the court.
 

 It is a well settled rule of the common law, that where one person contracts as the agent of another, and the fact of his agency is known to the person with whom he contracts, the principal alone and not the agent is responsible. This rule is directly applicable to the case of attorney and client, and has been so applied whenever the question has arisen, except in the state of New-York. It was thus applied in England in the cases of
 
 Hartop
 
 v.
 
 Juckes,
 
 (1
 
 Maule & Sel.
 
 709;
 
 Robbins
 
 v.
 
 Bridge,
 
 (3
 
 Mees. & Wels.
 
 114;) and
 
 Maybery
 
 v.
 
 Mansfield,
 
 (9
 
 Ad. & El. N. S. 58, Eng. Com. Law,
 
 753 ;) in Vermont, in the cases of
 
 Sargent
 
 v.
 
 Pettibone,
 
 (1
 
 Aikens,
 
 155 ;) and
 
 Wires
 
 v.
 
 Briggs,
 
 (5
 
 Verm.
 
 101;) in Maryland, in'the case of
 
 Maddox
 
 v.
 
 Cranch,
 
 (4
 
 Har. & McHen.
 
 343;) in Pennsylvania, in
 
 Morse
 
 v. Porter, (13
 
 *404
 

 Serg. & Rawle,
 
 100;) and in Michigan, in
 
 Preston
 
 v.
 
 Preston,
 
 (1
 
 Doug.
 
 292.) The decisions in all these cases were based upon the general rule to which I have referred. In the case of
 
 Robbins
 
 v.
 
 Bridge,
 
 Lord Abinger says, “The attorney is known merely as the agent, the attorney of the principal, and is directed by the principal himself. The agent acting for and on the part of the principal, does not bind himself, unless he offers to do so by express words.” So in
 
 Wires
 
 v.
 
 Briggs,
 
 the court say, “ Ho rule of law, it has been said, is better ascertained, or stands upon a stronger foundation than this, that where an agent names his principal the principal is responsible, and not the agentand in
 
 Preston
 
 v.
 
 Preston,
 
 the language of Felch, J., is,
 
 “
 
 In conducting the suit, so far as third persons are concerned, the attorney is simply the agent of his client. The rule of law is well settled, that an agent does not become personally liable,- unless his principal is unknown, or there is no responsible principal, or the agent exceeds his power, or becomes liable by an •undertaking in his own name.”
 

 It is clear, therefore, that the decisions in this state, in which attorneys and solicitors have been held liable for the fees of the officers of the court, upon a promise implied from- their acts done as attorneys merely, are in conflict with principle, and with the whole current of authorities elsewhere on the subject. In all such cases, it is a sound and salutary rule, that while the court, for the mere sake of restoring the harmony and symmetry of the law, will not interfere to overthrow a doctrine which has through a series of decisions come to be universally regarded as fixed and settled, they will nevertheless circumscribe the anomaly within as narrow limits as possible. It is never admissible to extend'such a rule by a resort to analogy; for the obvious reason, that every new case, to which the erroneous rule is applied, affords the basis of a still wider departure from principle.
 

 But if such a rule is to be extended to analogous eases, it should at least appear, that the reasons which originally led to its adoption apply with all their force to the new eases. The leading case on the subject in the courts of this state is that of
 
 *405
 

 Adams
 
 v.
 
 Hopkins,
 
 (5
 
 John.
 
 252.) In the elaborate opinion,of Judge Thompson in that case, the reason for holding the attorney liable is distinctly stated, as follows : “ The sheriff had discretionary power left him whether to perform the service or not.
 
 He is bound to execute every legal process delivered to him, before he can demand his fees.
 
 All reasonable security ought therefore to be extended to him, to insure a compensation for his services. He cannot be presumed to be acquainted with the residence or responsibility of parties.
 
 Very different is the situation of the attorney.
 
 He is not bound to undertake any suit, or incur any responsibility, without a reasonable indemnity, if suspicious of his employer.” It is true the judge goes further and says :
 
 “
 
 But admitting an attorney to stand in the situation of a general agent, this would not exonerate him ; for in such cases it is not only necessary that the agent should act in his official capacity, but that it should appear that the creditor
 
 intended
 
 to look to the principal for compensation.” It is scarcely necessary to say, that this position of the learned judge cannot be supported. It is in conflict not only with the cases which I have cited above, but many others. Indeed the contrary is too well established to be for a moment doubted. The decision must therefore be held to rest' exclusively upon the reasons given, growing out of the hardships of the case. And it must be conceded that these reasons are cogent, if it be admissible to depart so widely from an established principle, upon such grounds. It is true that the attorney knows his principal, and has it in his power completely to protect himself, by requiring an indemnity, while the sheriff is compelled to act without any such security. Were it not for this reason, it is clear the rule would never have been adopted; and if strictly confined to such cases, it will perhaps tend to promote justice and lead to no serious evils.
 

 Some other reason, however, must be found for the application of the rale to cases where the officer employed, or set in motion by the attorney, is not
 
 obliged
 
 to act, but has equal means of self protection with the atorney himself. What reason can be given in such cases for violating a well understood general rule,
 
 *406
 
 for the sake of a party who has neglected to avail himself of the means in his power to secure a compensation for his services? The only one which has been suggested, is that given by the chancellor in the case of the
 
 Trustees of Watertown
 
 v. Cowen, (5 Paige, 510,) in which it was held that the solicitor in a suit in chancery was liable to an examiner for his fees. It is, that “ it appears to have been the uniform practice in this state for sheriffs, clerks, masters, registers, and other officers of courts of record, to charge their fees to the attorney or solicitor of the party for whose benefit the services are performed.” I do not intend to criticise the sufficiency of this reason; but would observe, that of all the officers specially enumerated by the chancellor, masters are the only ones who would not come substantially within the reason given for the rule in
 
 Adams
 
 v.
 
 Hopkins.
 
 The chancellor does not assert that there had been any such settled practice in regard to examiners; but after stating the practice in regard to other officers, he says: “ And there are no good reasons for distinguishing the case of an examiner from that of any other officer of the court in this respect.” In thus extending this rule, founded avowedly upon mere usage, to a case to which the usage or practice could not be said to have been applied, the chancellor evidently disregarded the doctrine, that a rule, which is in conflict with general principles, is not to be enlarged by reasoning, drawn from analogy.
 

 But without calling in question the authority or 'accuracy of this decision, it is sufficient to say that it does not control the present case. Beferees do not belong to any of the classes of officers to whom the rule has been held to apply. On the contrary, it was expressly held in the case of
 
 Hornell
 
 v. Kinney, (1
 
 How. Pr. R.
 
 105,) that an attorney is not liable for the fees of referees. That, it is true, was an action at law, while the suit in which the plaintiffs acted was in equity; and the argument drawn from the identity of the duties performed now, by a referee in an equity suit, with those formerly performed by a master in chancery, is not without weight. It is, however, met by several considerations. To hold the attorney liable in the
 
 *407
 
 case of referees in equity suits, simply because their duties are similar to those, of masters in chancery, would be to make a new application of a rule admitted to be anomalous, and repugnant to general principles, upon the ground of analogy alone. But a stronger objection arises from the inconvenience and confusion which would result from applying to officers, known by the same name and appointed by the same'cotirt, different rules, depending merely upon the side of the court from which they happen to receive their appointment. Referees would have, in every case, to settle the often difficult question, whether the suit should be regarded as in its nature legal or equitable, before they could .determine to whom they must look for their fees. I see no ground for distinguishing between referees appointed under the judiciary act, in a suit originally commenced in chancery, and those appointed in an equity suit under the code. The difference in the duties and functions of referees, in different cases under the code, is as great as in chancery and common law cas'es prior to its adoption. Whatever rule, therefore, is adopted for this case, must equally apply to the case of referees in equity cases under the code.
 

 It is not intended, by this decision, to interfere with the doctrine advanced in the case of
 
 Adams
 
 v.
 
 Hopkins.
 
 There is an apparent equity in holding the attorney liable in a case of that description, which goes very far to justify the departure from principle involved in the decision; and if the rule be confined to those cases to which the reason given by Judge Thompson applies, we have at least a clear line of distinction'between the cases where the liability of the attorney attaches and where it does not.
 

 The judgment should be reversed and a new trial ordered, with costs to abide the event.
 

 Judgment reversed.