PEOPLE v. DECKER.

(Supreme Court, Appellate Division, Second Department.    March 10, 1911.)

1. LARCENY (§ 62*)—EVIDENCE.
  Evidence *held* insufficient to show that defendant was the person who took the property.
  [Ed. Note.—For other cases, see Larceny, Cent. Dig. §§ 153, 162; Dec. Dig. § 62.*]

2. CRIMINAL LAW (§§ 417, 698*)—EVIDENCE—DECLARATIONS.
  Accusatory statements by a third person in the defendant's absence are incompetent and should be stricken out on the court's own motion.
  [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 950, 1651–1654; Dec. Dig. §§ 417, 698.*]

3. CRIMINAL LAW (§§ 407, 409*)—EVIDENCE—DECLARATIONS.
  Accusations made to defendant directly, when taken in connection with his conduct at the time, may be relevant; but they are never direct evidence, and, when met with a denial and conduct consistent with innocence, lose all their probative force.
  [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 898–900, 908, 918, 919; Dec. Dig. §§ 407, 409.*]

4. CRIMINAL LAW (§ 730*)—ARGUMENTS OF COUNSEL.
  The failure of the trial judge to check the district attorney in misstatements to the effect that accusatory declarations by a third person were direct evidence is ground for reversal.
  [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1693; Dec. Dig. § 730.*]

Appeal from Kings County Court.

Edward C. Decker was convicted of grand larceny, and he appeals. Reversed.

Argued before JENKS, P. J., and BURR, CARR, WOODWARD, and RICH, JJ.

Luke O'Reilly, for appellant.
Peter P. Smith, for the People.

BURR, J.    In a criminal action defendant is entitled to be confronted with the witnesses against him in the presence of the court (Code Cr. Proc. § 8), and to an acquittal in case of a reasonable doubt whether his guilt is satisfactorily shown (Id. § 389).    These fundamental rules were not observed in the trial of this case.    Defendant was charged with the crime of grand larceny in the first degree, in that on the 29th day of January, 1909, he stole certain jewelry, the property of his wife, Margaret Decker.    If we concede that the evidence satisfactorily establishes the disappearance of the jewels, it fails to connect defendant with their loss.    It is entirely circumstantial in character.    Not only is it insufficient to exclude every other rational hypothesis except that of the guilt of the accused, but it does not even indicate this by the fair preponderance which is requisite in a civil action.

Defendant's wife was the complaining witness.    The evidence would indicate that the marital relation had not been characterized by perfect

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

harmony. On the night in question, while defendant was absent from his residence, his wife after cleaning her jewelry wrapped it in two handkerchiefs, about these wrapped a towel, and then hid it behind a hamper which was used to hold her child's clothing and which stood in a room adjoining her own bedroom. About half past 11 her husband returned. She was then in bed, and he prepared to retire. Shortly after doing so, he and his wife quarreled, and she called the servant, a girl named Julia Robinson, and asked her to go for a policeman. The complaining witness had previously quarreled with the servant and had notified her that at the end of the month she would discharge her. When the policeman arrived, she and defendant and the servant went downstairs to meet him. After the policeman had succeeded in quieting the disturbance, defendant remained downstairs, and Mrs. Decker and the servant returned to the apartment. Then a quarrel broke out between the maid and her mistress, so that when defendant returned upstairs the former was about to leave. Defendant went out with her, and about 4 o'clock in the morning they returned together. While they were gone, defendant's wife missed the jewels. There was no evidence that defendant knew the place where she was in the habit of keeping her jewels when they were not, as was usually the case, deposited in the storage warehouse. There was no evidence that defendant had gone into the room where they were hidden between the time of his arrival at home and his departure with the servant except on one occasion. He was then undressed, and went into the adjoining room to obtain his pajamas, which were hanging there. He could not well have then concealed the articles about his person, and his wife was watching him while he was in the room. His pajamas were hanging on the opposite side of the room from that where the hamper stood. This room was connected with the bedroom occupied by defendant and his wife through a door which stood open during all the time that he was in there. It also connected with the private hall of the apartment through another door close to the place where the hamper stood. This door was not locked. Although Mrs. Decker says that she did not see the servant enter this room, it is quite evident that she had abundant opportunity to do so, and that too without being seen during a period when defendant and his wife had left their bedroom and gone into the kitchen, where they remained about 20 minutes. The servant knew where the jewels were hidden. After the defendant's return, when Mrs. Decker discovered the loss of her property, she accused him of taking it, and he denied it, or that he knew anything about it. She also accused the servant of having taken it. It does not clearly appear whether this was before or after she had accused her husband, nor what reply the girl made to the accusation.

In the morning, at defendant's suggestion, he and his wife and the girl went together to the police station to report the loss. Defendant was then searched, but nothing was found upon his person. Mrs. Decker was then allowed to testify that while there in the presence of the officer the girl said:

"Why don't you give Mrs. Decker back her diamonds? I don't want to go to jail. You know where they are."

Again defendant denied knowing anything about them.　The district attorney vainly endeavored to prove by defendant's wife that he had taken this jewelry before.　The only evidence of a positive character tending in that direction was her statement that during the previous summer she had lost a diamond sunburst, but she admitted that she had no proof that defendant had taken it.　The same witness was also allowed to testify that the servant told her that when she and defendant were going downstairs together on the night of the quarrel "he showed her the handkerchief that is supposed to have contained the diamonds," and said "that he threatened her life if she betrayed him."

With the exception of alleged conversations between defendant and his wife after his arrest, in which he begged her not to send him to jail, this is a fair summary of all of the evidence introduced by the people in this case.　Upon such evidence the trial court should have granted defendant's motion to advise the jury to acquit, and this judgment of conviction cannot stand.　The circumstances point quite as strongly, if not more so, to the servant, Julia Robinson, as the person who stole the jewelry if it was stolen, as to the defendant; at least, the defendant's guilt is not established beyond a reasonable doubt.　But in addition to that we feel that comment is necessary respecting conduct on the part of the district attorney which the trial court failed to check or repress.　The testimony of the complaining witness as to statements of the servant made in defendant's absence as to what occurred while they were going downstairs together, tending to fasten guilt upon him, was utterly incompetent.　The court should have stricken this out of its own motion.　Statements accusatory of defendant, made to him directly, either by his wife or the servant, when taken in connection with his conduct in the face of such accusations, might be relevant upon the question of his guilt or innocence.　Chase's Stephen's Digest of Evidence (2d Ed.) 25; Kelley v. People, 55 N. Y. 565, 14 Am. Rep. 342; Lunham v. Lunham, 133 App. Div. 215, 117 N. Y. Supp. 396.　But they are never direct evidence of the fact itself, and, when met with a denial and conduct in the presence of the accusation consistent with innocence, lose all their probative force.　It must be presumed that the district attorney is familiar with this elementary rule of law, and yet we find that he made an unfair and improper use of such statements.　It appeared that the girl Julia Robinson was present in court during the trial.　She was not called as a witness by either side.　If she claimed to be innocent and the district attorney believed that she was, he could well have afforded to place her on the stand and, confronting the accused with the witness, take her statements under oath subject to the right of cross-examination.　If she were guilty and defendant innocent, defendant could not well afford to take the risk of placing her on the stand and expect her to exculpate him by confessing her own guilt.　Defendant's counsel was justified, therefore, in commenting upon the omission of the district attorney to call her as a witness.　In his summing-up, in reply, the district attorney said:

"And the reason I didn't put her upon the stand is because her evidence is all in by the testimony of the others.　She made her statements of all she saw and all she knew at the police station to Mrs. Decker. * * * Now, you have the testimony of Julia Robinson before you. * * * What is her

testimony? ·That in going down the stairs he·said to her—had a handker-chief in his hand, and Mrs. Decker's language was, 'the handkerchief in which the diamonds were tied up.' That is the way she described it, and at the police station she made the same statement to the lieutenant behind the desk —that he came downstairs, and that he threatened her if she gave him away to his wife. That shows you who carried these diamonds out of that bed-room that night, and who appropriated them to his own use. It was not Julia Robinson."

Her testimony was not before the court with regard to these facts. She had not been called as a witness. She had not been examined un-der oath and subjected to cross-examination. Her declarations had been admitted, or should have been admitted, for an entirely different purpose, and the district attorney must have known it. The trial judge should then and there have checked him in his misstatements. Not only did he fail to do that, but he forbade counsel for defendant to interrupt him during his summing-up while he was making other statements to the jury equally reprehensible. While as a rule counsel should not be allowed to interrupt opposing counsel, reserving until the close of his argument objections or exceptions to real or supposed misstatements, it is the duty of the court to see that· counsel do not abuse their privilege. In this case, not only was there no check placed upon the district attorney, but in his charge to the jury the trial judge failed to instruct them as to the real purpose and effect of this testi-mony and allowed them to go into the jury room with the false im-pression conveyed by the district attorney's remarks still in their minds. We take occasion once again to lay stress upon the importance and ·necessity of the principle that the trial judge should preside at criminal trials with all that this term fairly implies and with all that it requires.

The judgment of the County Court of Kings County should be re-versed, and a new trial ordered. All concur.