PEARL LA VAN ALLEN, Appellant, *v.* GEORGE W. ALLEN,
Respondent.

*Husband and wife — malicious prosecution — action for malicious
prosecution may not be maintained by wife against husband.*

*Allen* v. *Allen*, 220 App. Div. 759, affirmed.
(Argued October 27, 1927; decided November 22, 1927.)

APPEAL from a judgment, entered June 30, 1927 upon
an order of the Appellate Division of the Supreme Court
in the first judicial department, which affirmed an order
of Special Term granting a motion by defendant for
judgment in his favor upon the pleadings. The action,
wife against husband, was for malicious prosecution. The
question was whether under section 57 of the Domestic
Relations Law such an action could be maintained.

*K. Courtenay Johnston* for appellant.

*Edmund L. Mooney* and *Wilber W. Chambers*, amici
curiæ.

*Louis M. Kommel, George Boochever* and *Max Zucker*
for respondent.

*Frederick Collin,* amicus curiæ.

Judgment affirmed, with costs, on the ground that the
later acts of the Legislature have left unchanged the rule
adopted by this court in *Schultz* v. *Schultz* (89 N. Y. 644).

Concur: CARDOZO, Ch. J., CRANE, LEHMAN, KELLOGG
and O'BRIEN, JJ.; POUND, J., dissents in opinion, in which
ANDREWS, J., concurs.

POUND, J. (dissenting). The complaint states a cause
of action for malicious prosecution. It has been dismissed
because it appears that the defendant is the husband of
the plaintiff. Malicious prosecution is a personal injury.
(Gen. Cons. Law, § 37-a [Cons. Laws, ch. 22].) The
question is whether the fiction of legal unity or the con-
cept of public policy adumbrated thereby defeats the
right of the wife to sue her husband for personal injuries

under existing statutes. The law of the rights of married women has been evolved from the " archaic period of our race " (EARL, J., in *Bertles* v. *Nunan*, 92 N. Y. 152, 156), when husband and wife were regarded in law as one person, to its present status where the recognition of the wife's separate person and property is practically complete. The Married Women's Acts are held to have no relation to or effect upon real estate conveyed to husband and wife jointly and they take, as at common law, as tenants by the entirety. (*Bertles* v. *Nunan, supra*.) This is a rule of property rights which stands until the Legislature changes it. It is also assumed to be the law of New York, as held in 1882 in *Schultz* v. *Schultz* (89 N. Y. 644) that a husband may libel or slander his wife, prosecute her without probable cause on criminal charges, assault her or falsely imprison her without subjecting himself to liability to her for damages, not because he is within his legal rights in thus injuring her, but because the Legislature has failed specifically to include the husband in the general grant to her of the right to sue for injuries to her person. With these exceptions, the fiction is well nigh as archaic as its origin and we are, therefore, asked to reconsider the doctrine of the leading case as applied to existing statutes.

The question first presents itself whether we have the same statutes to consider as the court then had before it. If the statutes are identical in intention, the early case might be deemed controlling. If the Legislature has expressed a different intention, we are at liberty to disregard the rule and consider only the reasons for it.

Domestic Relations Law (Cons. Laws, ch. 14), section 57 provides:

" A married woman has a right of action for an injury to her person, property or character or for an injury arising out of the marital relation, as if unmarried. She is liable for her wrongful or tortious acts; her husband is not liable for such acts unless they were done by his

actual coercion or instigation; and such coercion or instigation shall not be presumed, but must be proved. This section does not affect any right, cause of action or defense existing before the eighteenth day of March, eighteen hundred and ninety."

The history of this section begins with chapter 90, Laws of 1860, which provided, *inter alia*, as follows:

" And any married woman may bring and maintain an action in her own name, for damages, against any person or body corporate, for any injury to her person or character, the same as if she were sole."

This section was amended by chapter 172, Laws of 1862, but not in respect to the right of a married woman to maintain an action for injuries to her person. It was repealed by Laws of 1880, chapter 245, section 38, and was non-existent when the *Schultz* case was decided. Between 1880 and 1890 the only statute in force on this subject was Code of Civil Procedure, section 450, which did not give a right of action but regulated procedure only. (*Bennett* v. *Bennett*, 116 N. Y. 584.) Next comes Laws of 1890, chapter 51, which reads as follows:

" § 1. From and after the date of the passage of this act a married woman shall have a right of action for injuries to her property, injuries to her person or character, and injuries arising out of the marital relation in all cases in which an unmarried woman or a husband now has a right of action by law.

" § 2. A husband shall not be liable in damages for his wife's wrongful or tortious acts, nor for injuries to person, property or the marital relation, caused by the acts of his wife, unless the said acts were done by actual coercion or instigation of the husband; and such coercion or instigation must be proved in the same manner as any other fact is required to be proved; but in all cases embraced in this section the wife shall be personally liable for her wrongful or tortious acts.

" § 3. Nothing in this act contained shall in any way

affect any rights, causes of action or defenses existing at the time of the passage thereof.

" § 4. This act shall take effect immediately."

This chapter is indicative of the legislative purpose to change the law in some respect as evidenced by the opening words, " from and after the passage of this act a married woman . shall have a right of action," etc., and from the saving clause. The present statute (Dom. Rel. Law, § 57) contains the same saving clause and indicates March 18, 1890, as a new starting point for judicial construction. Injuries to person and property are now grouped together in the same clause. In the act of 1860 they were covered by separate clauses. The statutory right of the wife to sue the husband for injuries to her property (with the reciprocal right of the husband to sue the wife) was recognized at an early day. (*Whitney* v. *Whitney*, 3 Abb. [N. S.] 350; *Berdell* v. *Parkhurst*, 19 Hun, 358; *Howland* v. *Howland*, 20 Hun, 472.) This change also might be regarded as significant of the legislative purpose to place injuries to person and property on the same footing. It follows that we have to construe, not the act of 1860, but a new statute far wider in its scope. It can no longer be said, as EARL, J., said in *Coleman* v. *Burr* (93 N. Y. 17, 25), that " the statutes referred to touch a married woman in her relations to her husband only so far as they relate to her separate property and business." So far as that construction was the *ratio decidendi* of *Schultz* v. *Schultz* (*supra*), it has been overruled. A married woman has had, since March 18, 1890, in the language of the statute, a right of action in all cases as if single, and her husband, as such, is no longer a necessary or proper party in her tort actions. (L. 1890, ch. 51; Dom. Rel. Law, § 57.)

We have next to consider the proper construction of the present statutes. The law says that a married woman has a right of action for an injury to her person as if unmarried. If she were not defendant's wife,

plaintiff could maintain an action against him for malicious prosecution. Why should the marriage relation permit the husband maliciously to prosecute his wife on a criminal charge without subjecting himself to liability for damages?

We are now confronted with the rule of *stare decisis* and enjoined to defer to cases already adjudicated. The law is said to be established by the express decision of this court that the action cannot be maintained. This argument, if applicable, is weighty but not conclusive. (*Klein* v. *Maravelas*, 219 N. Y. 383; *Oppenheim* v. *Kridel*, 236 N. Y. 156.) When time makes ancient rules of personal rights and remedies uncouth, illogical and productive of harm, they need not be inexorably insisted upon. Better protection may be given to such rights in the future without destroying rights acquired in the past. (Black's Law of Judicial Precedents, pp. 218–220 and cases cited.) Moreover, if the reasons which led to the adoption of the rule in the *Schultz* case do not apply with all their force to the present case, that rule may properly be kept within the narrowest limits and need not be extended by analogy to the present statutes. (*Judson* v. *Gray*, 11 N. Y. 408.) So far as such statutes may be regarded as new enactments, indicative of a change in legislative intent, *stare decisis* should not deter the court from examining the question anew.

We have not been backward in bringing the law into harmony with modern ideas of the marital relation. In *Oppenheim* v. *Kridel* (*supra*) the court dealt with another phase of the situation. Blackstone had said (3 Com. 143): " The inferior [the wife] hath no kind of property in the company, care or assistance of the superior [the husband] as the superior is held to have in those of the inferior." Therefore, the wife at common law had no right against one who had alienated the husband's affections or had criminal conversation with him. CRANE, J., said: " Whatever may have been the rights of the wife in this particular under ancient law, there is no

reason or law against her maintaining such an action to-day so long as the husband may do so." Let us then consider the cases relied on by the respondent, not as controlling authorities, but on the strength of their reasoning.

In *Schultz* v. *Schultz* (27 Hun, 26) the General Term of the Supreme Court, first department, in the year 1882, upheld the right of the wife to sue her husband for assault. BRADY, J., said that the statute was broad enough to include the husband as one of the persons against whom the wife may bring an action for assault and battery and that to allow the right in an action of that character would be in accord with the policy of the law, " calculated to preserve peace, and in a great measure prevent barbarous acts, acts of. cruelty, regarded by mankind as inexcusable, contemptible, detestable." DAVIS, J., giving at least lip service to the reasoning of his colleague, dissented on the ground that " the doctrine of *stare decisis*" (*Freethy* v. *Freethy*, 42 Barb. 641; *Longendyke* v. *Longendyke*, 44 Barb. 366) " requires us to leave to the Court of Appeals, or to the Legislature, the gallant duty of setting the law free to redress, by civil actions, all the domestic disputes of husband and wife, whether committed by unbridled tongues or angry blows." When the case reached this court an order of arrest granted therein was reversed without opinion, DANFORTH, J., dissenting in a long and carefully prepared, although unreported, opinion in which FINCH, J., concurred. In *Abbe* v. *Abbe* (22 App. Div. 483) HATCH, J., although in harmony with the views expressed by DANFORTH, J., said that it was settled on authority that the action could not be maintained. In *Perlman* v. *Brooklyn City R. R. Co.* (117 Misc. Rep. 353; affd., 202 App. Div. 822) the right of the wife to maintain an action against her husband for personal injuries was denied, again on authority. " We have held that she cannot maintain an action against her husband for such an injury," says EARL, J., in *Bertles* v. *Nunan* (*supra*,

p. 160) and again in *Coleman* v. *Burr* (*supra*, p. 30). The rest is silence,˙except as it may be implied from opinions in other cases that the Married Women's Acts of 1860 and 1862 were to be construed as altering the law of husband and wife in respect to a wife's separate property and earnings only, and not as affecting torts by and against her. (*Fitzgerald* v. *Quann*, 109 N. Y. 441; *Mangam* v. *Peck*, 111 N. Y. 401.)

The fundamental question has been considered often and at length by many courts. It has been held that a wife may not, in the absence of express legislation, sue her husband for a personal tort under the Married Women's Acts in the Federal courts (*Thompson* v. *Thompson*, 218 U. S. 611); in California (*Peters* v. *Peters*, 156 Cal. 32); in Georgia (*Heyman* .v. *Heyman*, 19 Ga. App. 634); in Iowa (*Peters* v. *Peters*, 42 Ia. 182; *Maine* v. *Maine & Sons Co.*, 198 Ia. 1278); in Indiana (*Henneger* v. *Lomas*, 145 Ind. 287); in Maine (*Abbott* v. *Abbott*, 67 Me. 304); in Michigan (*Bandfield* v. *Bandfield*, 117 Mich. 80; *Harvey* v. *Harvey*, 239 Mich. 142); in Minnesota (*Strom* v. *Strom*, 98 Minn. 427); in Mississippi (*Austin* v. *Austin*, 136 Miss. 61); in Missouri (*Rogers* v. *Rogers*, 265 Mo. 200); in New Jersey (*Sargeant* v. *Fedor*, 130 Atl. Rep. 207); in Rhode Island (*Oken* v. *Oken*, 44 R. I. 291); in Tennessee (*Lillienkamp* v. *Rippetoe*, 133 Tenn. 57); in Texas (*Gowin* v. *Gowin*, Tex. Civ. App. [264 S. W. 529]; see note, 10 Cornell Law Quarterly, 61); in Virginia (*Keister* v. *Keister*, 123 Va. 157) and in Washington (*Schultz* v. *Christopher*, 65 Wash. 496).

It has been held that the right of action exists under the statutes in Alabama (*Harris* v. *Harris*, 211 Ala. 222); in Arkansas (*Fitzpatrick* v. *Owens*, 124 Ark. 167); in Connecticut (*Brown* v. *Brown*, 88 Conn. 42; *Bushnell* v. *Bushnell*, 103 Conn. 583); in Nebraska (*Graves* v. *Peck*, 114 Neb. 745); in New Hampshire (*Gilman* v. *Gilman*, 78 N. H. 4); in North Carolina (*Roberts* v. *Roberts*, 185 N. C. 566, see note, 33 Yale Law Journal, 315); in Oklahoma

.37

(*Fiedler* v. *Fiedler*, 42 Okla. 124); in South Carolina (*Prosser* v. *Prosser*, 114 S. C. 45) and in Wisconsin (*Wait* v. *Pierce*, 191 Wis. 202). Whichever. way the decision turns, a vigorous dissent from the views of the majority almost invariably appears and the decision itself often depends cn the language of statutes in which the right of the wife is more narrowly stated or less clearly defined than in New York at the present time. In Mississippi, for example, the court said that nothing in the statute gave the husband a reciprocal right against the wife. (*Austin* v. *Austin*, *supra*, see note, 38 Harvard Law Review, 383.) In New York the wife is liable (Dom. Rel. Law, § 57) "for her wrongful or tortious acts," and no exception is made against the husband.

The court is thus set free to re-examine the question, not primarily by the silence of the majority in the *Schultz* case, the lapse of time, and the conflict of authority, for those circumstances might not justify the court in refusing to follow a well-established precedent; but by the subsequent change in the language of the statutes, which require a new consideration of the factors that determine the present legislative intent. (*People ex rel. Rand* v. *Craig*, 231 N. Y. 216, 220.)

DANFORTH, J., said that the appellant in the *Schultz* case rests upon the maxim that "husband and wife are one at law." The dogma of the common law by which husband and wife were regarded as one person, the legal existence of the wife during the marriage being incorporated and consolidated or merged into that of the husband, can have little if any weight under the Married Women's Acts now in force. Rules of property and difficulties of procedure, dependent on the fiction of marital unity, stood in the way of the recovery of damages by the wife against the husband at common law. As they were one person, neither could sue the other. A wrong to her was an injury to him. If there was no injury to him there was none to her. The wife had neither

remedy nor right. (*Abbott* v. *Abbott, supra.*) All this is ancient and obsolete learning. Whether it be regarded as a question of procedure or one of substantial right (*Bennett* v. *Bennett, supra*), the non-liability of the husband for personal torts against the wife is inconsistent with the language of the statutes as they now read. When a married woman may be a party to any action in the same manner as if she were single (Civ. Prac. Act, § 200); is alone liable for her wrongful or tortious acts (Dom. Rel. Law, § 57; Penal Law, § 1092); may carry on a separate business, own and dispose of property and contract with her husband in regard thereto as if unmarried (Dom. Rel. Law, §§ 51, 56); may sue him and be sued by him for injuries to property; may recover damages for injuries to her person against any one but her husband; may testify against him in civil and criminal actions (Civ. Prac. Act, § 346; Code Crim. Pro. § 392); may exercise the elective franchise, and may sue for the alienation of his affections or for criminal conversation, the twain are no longer one flesh in the eyes of the law; the wife's identity ceases to be merged into that of the husband, and the ancient fiction, properly understood, merely furnishes the background for the construction of statutes and the determination of legislative intent.

On the question of construction, EARL, J., in *Bertles* v. *Nunan* (*supra*) says: " In construing these statutes [the Married Women's Acts] the rule must be observed * * * that statutes changing the common law must be strictly construed, and that the common law must be held no further abrogated than the clear import of the language used in the statutes absolutely requires." Thus read, the common-law incidents of marriage were to be swept away only by express enactments. It would follow that unless the statute expressly gave the wife a right of action against her husband, the common-law fiction of unity of persons forbade a recovery under the statute. But our decisions as to torts of the husband

affecting the property of the wife cannot be reconciled with the old notion of the merger of separate identities (*Wright* v. *Wright*, 54 N. Y. 437; *Wood* v. *Wood*, 83 N. Y. 575), except on the theory that the Married Women's Acts applied as between husband and wife, as they no longer do, solely to the wife's separate property and earnings.

On the question of legislative intent, in *Thompson* v. *Thompson* (*supra*) the majority of the court refused to interpret the statute to include the right of the wife to sue the husband for personal injuries. " We do not believe," says Mr. Justice DAY, " that it was the intention of Congress, in the enactment of the District of Columbia Code, to revolutionize the law governing the relation of husband and wife as between themselves." The Married Women's Acts, concededly revolutionary, were deemed to be not so revolutionary as that. Mr. Justice HARLAN, with whom concurred Justices HOLMES and HUGHES, dissented. He said that the judgment rendered defeated " the clearly expressed will of the Legislature by a construction of its words that cannot be reconciled with their ordinary meaning."

Public policy is said to favor this rule of statutory construction as safeguarding the home. " It is better to draw the curtain, shut out the public gaze, and leave the parties to forget and forgive." (SETTLE, J., in *State* v. *Oliver*, 70 N. C. 60.) This doctrine has been invoked to defeat an action by an unemancipated minor child against his parent for personal injuries (20 R. C. L. 631). That question, however, is an open one in New York, nor has the common law been affected by any statute on the subject.

The reasoning against the right of the wife to maintain her action against the husband seems to-day more dialectic than persuasive in character. The present **tendency** of the courts is to look at the substance of rights rather than blindly to adhere to fictions and formulas. " When

logic and the policy of a state conflict with a fiction due to historical tradition, the fiction must give way." (*Black-stone* v. *Miller*, 188 U. S. 189, 206.) Public policy is not invoked to prevent the airing in court of family troubles in general and it should not prevail more heavily against this action than against actions for divorce, separation, annulment, criminal conversation and alienation of affections, actions arising out of disputes over property, criminal prosecutions of the husband by the wife and proceedings in the Courts of Domestic Relations. (*John-son* v. *Johnson*, 201 Ala. 41.) Moreover, as Mr. Justice DAY says in *Thompson* v. *Thompson* (*supra*), considerations of public policy are addressed to the legislative, not the judicial branch of the government. " In cases like the present, interpretation of the law is the only function of the courts." Legislative intent is an illusive thing. The courts should seek it, whenever possible, in the plain meaning of plain words. Rules for determining such intent do not justify a change in the language of unambiguous statutes. (*Newell Universal Mill Co.* v. *Muxlow*, 115 N. Y. 170, 174; dissenting op., HARLAN, J., in *Thompson* v. *Thompson, supra.*) Statutes changing the common law should be fairly construed in harmony with their general purpose. If they are to be construed strictly, they should also be construed sensibly. When the wife is given in law, as in fact, an existence separate from her husband for all other purposes, the courts should not, by speculating on the legislative intent, remerge her being into that of her husband and assume a legal unity of husband and wife to exist for the single purpose of protecting him when he injures her person without right. When the common-law incidents of marriage have been swept away by statute to the extent that the fiction of unity of person no longer stands in the way of redress by the wife of wrongs against her person or property by legal remedies, vestigial rights of the husband should disappear with the shattered organism.

The contention is made that the wife is amply protected without extending the husband's liability. Aga'n public policy is sought as a guide to the legislative intent. She may, if threatened with violence, bind him over to keep the peace. (Code Crim. Pro. § 84.) If he actually commits an assault she may have him arrested and punished, for he has no right to strike his wife or punish her under any circumstances or provocation. (*Com. v. McAfee*, 108 Mass. 458.) She may maintain an action against him for separate support and maintenance on the ground of cruelty. (Civ. Prac. Act, § 1161.) She may recover against him for damages to her property as if he were a stranger. (*Wright* v. *Wright, supra; Wood* v. *Wood, supra.*) These remedies may not be adequate. Any other person may sue the husband for reparation in damages for injuries to the person. "Wherever there is a valuable right and an injury to it, with consequent damages, the obligation is upon the law to devise and enforce such form and mode of redress as will make the most complete reparation. A technicality must not be permitted to work a denial of justice." (*Foot* v. *Card*, 58 Conn. 1.) The exaggerated influence of an outgrown fiction should not lead the court to withhold liability for personal injuries when the wife is the injured party. Separation and alimony she may not want. The punishment of the husband criminally may leave her destitute or disgrace her children. Not all torts of the husband against the wife are crimes, or even grounds for separation except as they amount to cruel and inhuman treatment. The wife may sue the husband for breach of contract. He can be brought into court by her to defend an action on his promissory note. She may sue him for damage to her property, real or personal. If he destroys or injures her property, the work of her hands, her rights are sacredly protected. He has no right to injure her. If he breaks her arm, if he has her arrested without cause and incarcerated, the law should not be so construed as to

deny her full and adequate relief.  His exemption from
liability as heretofore recognized suggests, what no one
claims, that he may lawfully beat his wife, maliciously
injure her reputation or prosecute her criminally to gratify
his malice against her.  As he has no right  to do these
things, the wife should have her remedy against him.
Consistency would seem to dictate that with the wide grant
of a legal entity to the wife, the Legislature should exclude
her right of action against her husband by clear words
in order to defeat her remedy (cf. Married Women's
Property Act of 1882; 45 and 46 Vict, ch. 75, § 12:
" No husband or wife shall be entitled to sue the other for a
tort," and 1921 Mass. Gen. Laws, ch. 209, § 6: " But this
section shall not authorize suits between husband and
wife "), rather than expressly include such right to bring
it into existence.

Opinions will doubtless differ to the end of time as to
the sanctity of the home and the dictates of a sound
public policy in relation thereto.  Woman's place has been
and will continue to be the subject of limitless discussion.
St. Paul exhorted wives to be subject to their husbands in
everything.  (Ephesians, 5:24.)  Advocates of free love
would abolish marriage entirely as an interference with
personal liberty.  We are dealing not with problems
of religious duty or even of public policy or with the
emancipation of women generally, but with a question
of statutory construction.  We are asked, for the sake
of the common-law unity of husband and wife, to insert
in the statute an exception that the Legislature failed to
insert which is inconsistent with the general legislative
purpose.  Every step in the history of legislation in regard
to married women, unless this is such an exception, has
been in the direction of the complete abrogation of the
old rule.  Is not section 457 of the Domestic Relations
Law to be read literally as part of a harmonious system
designed to permit married women to seek redress for any
violation of their rights by any person?  (*Bennett* v.

*Bennett, supra.*) We think that it should be so read, even though the Legislature has not in section 57, as in section 51, used the specific words " including the husband." Immunity is barbarous. Liability may result in abuse, as in all cases of liability. But justice must not be sacrified because the law may become an instrument of injustice. We, therefore, arrive at the conclusion that the fiction of marital unity may not be invoked under existing statutes to deny the wife a remedy against her husband for his personal torts.

While a married woman may sue her husband as if unmarried, the marital relation would be a defense to some acts which would be not only torts but felonies if committed against an unmarried woman without her consent. (Penal Law, § 2010.) The Legislature did not change the character of the marriage state in this regard. " It was not their purpose, however, to absolve a married woman from the duties which she owes to her husband." (*Coleman* v. *Burr, supra.*) The action for assault would then be subject to the defense that the husband was in the exercise of his marital rights and that the wife was in law a consenting party thereto. The statute, as we have construed it, affects remedies, not rights.

The judgment should be reversed, with costs in all courts, and the motion denied, with ten dollars costs.