The People of the State of New York ex rel. Dorothy Troare,
Relator, *v.* Hugh W. McClelland, Sheriff of Columbia County,
Respondent.

Supreme Court, Albany County, February, 1933.

*Dapolito & Rosen* [*Benjamin I. Rosen* of counsel], for the
petitioner.

*Thomas Cookingham, District Attorney*, for the relator.

Schenck, J.   This is an application for a writ of habeas corpus
directed to the sheriff of Columbia county. . Upon the return of
the writ the relator was produced in this court on the 8th day of
February, 1933, by the said sheriff and the district attorney
appeared herein upon notice served upon him pursuant to an order
of this court.   After a hearing the relator was remanded to the
custody of the sheriff of Columbia county and an opportunity
given to the district attorney and to the attorney for the relator
to file memorandum of authorities.

There appears to be no dispute as to the facts in this case.   The
relator, Dorothy Troare, is charged with the crime of grand larceny,
first degree, in violation of section 1294, subdivision 2, of the Penal
Law, in that she " did take away and carry away from one Jeane
Troare, when the said Jeane Troare was at the Spott's home,
$80.00 (Eighty Dollars).   The said taking and carrying away
took place in the night time.   This was done without the per-
mission of the said Jeane Troare, in direct violation of Sect. 1294,"
etc.   The complainant, Jeane Troare, is the husband of the relator,
Dorothy Troare, having been united in marriage to her, as appears
from the marriage certificate attached to the moving papers, on
August 23, 1929.

The only question for this court to consider is whether or not a
wife may be guilty of the larceny of her husband's property.

At common law, owing to the unity of husband and wife and the

rights of the husband in the property of the wife, the wife cannot commit felony of the goods of her husband nor can a husband under the common-law rule prosecute his wife for such a crime as here involved. The courts of this State are bound by the common-law doctrine unless that rule has been abrogated by subsequent statute. In *Schultz* v. *Schultz* (89 N. Y. 644) the Court of Appeals held that a wife could not maintain an action against her husband for assault and battery and in the recent case of *Allen* v. *Allen* (246 N. Y. 571), decided in 1927, it was held that the rule adopted in the *Schultz* case is still the prevailing law of the State.

I fail to find that any statute has changed the common-law rule. The so-called Married Woman's Acts have in no wise changed the common-law doctrine, although right of action by or against a married woman for tort has been given by section 57 of the Domestic Relations Law. That section provides that she is liable for her wrongful acts and her husband is not liable for such acts unless they were done by his actual coercion or instigation. This section, however, was considered by the Court of Appeals in *Allen* v. *Allen* (*supra*) where the question was presented as to whether or not section 57 of the Domestic Relations Law had so modified the legal unity of a husband and wife as to permit an action for malicious prosecution by a wife against her husband and the court held that the section had not changed the common-law rule.

The provisions of section 51 of the Domestic Relations Law relate exclusively to the property rights of the wife and have no direct application here.

The learned district attorney points out that section 1294 of the Penal Law, in defining grand larceny, first degree, provides in part: "A person is guilty of grand larceny in the first degree, who steals, or unlawfully obtains or appropriates, in any manner specified in this article:

" 1. Property of any value, by taking the same from the person of another in the night time; or,

" 2. Property of the value of more than twenty-five dollars, by taking the same in the night time from any dwelling house, vessel, or railway car; or, * * *."

It is contended that the words " a person " apply to a wife or a husband as well as to any other person in so far as the crime of larceny is concerned. I am not impressed with this argument. The penal statutes of this State must be strictly construed and if the Legislature intended that one spouse could charge the other with such crime, it should have used such language as to have left no room for doubt. The Legislature had power to enact a statute that would cover a situation of the character here presented. It evidently did not see fit so to do.

There does not seem to be a case precisely in point in this State, but in several other jurisdictions where the so-called Married Woman's Acts are for all practical purposes quite identical with our statutes in relation thereto, there have been several cases where this question has been squarely met and in those cases the courts have held that such acts have not changed the common-law status of the parties. In *State* v. *Arnold* (182 Minn. 313) it was contended that by reason of the Married Woman's Act and the fact that the Penal Code in Minnesota is purely statutory, a wife is wholly distinct from her husband in legal status, as well as in full control of her property rights and that she comes within the phrase " every person " as used in the larceny statute. The court held that the status of marriage has not been modified by the Married Woman's Act and only property rights and contracts are affected thereby, and said: " The common law rule that a wife could not commit larceny of her husband's property rested not alone upon the doctrine that her property and possessions were his but upon the unity of husband and wife which marriage created; the community of interest in the social institution of marriage. The technical ownership of his wife's personal property by the husband might have been sufficient to protect him if he were accused of its theft, but certainly his ownership and control of her personal property was not alone sufficient to justify the doctrine as to her immunity. Something more was needed to protect her, and that was the unity of the social relationship of marriage, giving the word ' social ' its broadest meaning."

Again, in *Snyder* v. *People* (26 Mich. 106) the court said, in commenting upon the effect of the Married Woman's Act upon the crime of arson, wherein a husband was accused of burning his wife's home: " The unity of man and woman in the marriage relation, is no more broken up by giving her a statutory ownership and control of property, than it would have been before the statute, by such family settlement as should give her like ownership and control."

In *State* v. *Phillips* (85 Ohio St. 317), where a woman was accused of larceny of her husband's money, it was contended that the Married Woman's Act had so changed her status that she might be guilty of larceny of her husband's property. The chief justice of the Ohio Supreme Court said: " We doubt that any member of that body [the Legislature] had in contemplation such a result when he voted for the statutes which protect the individual rights of married people. The Legislature was contemplating the expressed purpose of the statutes, and that only. They were not at that time considering crimes and criminal procedure; and surely they cannot be presumed to have intended a thing which they did not clearly

express and which is fraught with such far reaching and radical consequences to the law of domestic relations, for the abrogation of the doctrine of the legal unity of husband and wife, when pushed to its logical conclusion, would not only create crimes where there were none before, but would also authorize a husband or wife to maintain civil actions for tort against the other, such as actions for personal injuries, assault, false imprisonment, or slander.  *  *  * We cannot assume that the Legislature intended this without very clear evidence of such an intention in the language of the statutes."

A comparison of the provisions of the Domestic Relations Law in relation to married women and the married woman's statutes of Minnesota and Michigan and the Ohio General Code is most interesting, for the statutes of those States are so similar to our own that the application of the rule laid down in the three cases heretofore cited is pertinent to the case at bar.

The one remaining question is that of section 200 of the Civil Practice Act, which provides that a married woman may be a party in the same manner as though she were single, and that her husband is not a necessary or a proper party solely because of his relationship as such husband. That section clearly has no relationship to the question of larceny by a wife. It relates simply to a form of procedure and in no wise affects the marital status. It merely provides a method of procedure and practice in those cases where the Legislature has allowed a wife to sue and to be sued in her own name without joining her husband.

A discharge of the relator, Dorothy Troare, from custody is, therefore, required as a matter of law. It may well be that the equities in this criminal case are with the People of the State of New York. Nevertheless, as a matter of law, the relator has committed no crime and her release from custody is granted.