THE PEOPLE OF THE STATE OF NEW YORK, on Complaint of FLORENCE ROSSITER, Complainant, *v.* RALPH ROSSITER, Defendant.

City Magistrates' Court of New York, Borough of Manhattan, Seventh District, January 8, 1940.

*House, Grossman, Vorhaus & Hemley* [*Moses H. Grossman* and *Samuel Hassan* of counsel], for the complainant.

*Irwin D. Strauss*, for the defendant.

BROMBERGER, C. M. The defendant is here charged, upon a summons, with violation of section 1290 of the Penal Law of the State of New York, the respective parties having stipulated that the testimony adduced shall be applicable to any information the court may direct. The complainant, wife of the defendant, testifies that about September 16, 1935, she gave the defendant a check in the sum of $18,952.59, payable to her order, dated September 13, 1935, drawn on the Bank of St. Petersburg, Florida, to be deposited in the bank account of defendant's corporation for collection, and the proceeds thereafter to be paid over to her; that at the time of such delivery the defendant gave to the complainant $100 and an additional $1,500 shortly thereafter when the check cleared; that upon her subsequent demand, the defendant stated he had used the balance of the money for his own purposes and no longer possessed it. During November, 1936, the defendant stated to the complainant that he had expended certain amounts for household expenses and other items, which he would deduct from the balance due, and he then gave her a note for $13,562, dated November 28, 1936, due six months thereafter, and renewed on three separate occasions successively. None of those notes or any part thereof has been paid.

The defendant, at the conclusion of the complainant's direct testimony, and prior to her cross-examination, moved to dismiss the

charges on the ground that, being the husband of the complainant, he cannot, as a matter of law, be guilty of the crime of larceny or embezzlement of her funds.

It is clear that at common law neither a husband nor a wife could commit larceny from the other. (*Reg.* v. *Kenny,* 2 Q. B. D. 307; *Rex* v. *Willis,* 168 Eng. Rep. 1309 [1833]; *State* v. *Banks,* 48 Ind. 197.)

The question now presented to this court is whether this rule of the common law is still the law of this State, or whether it has been abrogated by the effect of the Married Women's Acts.

There is almost a complete dearth of New York authority upon the point at issue. The only decision which has squarely considered the matter is that of *People ex rel. Troare* v. *McClelland* (146 Misc. 545), in which the common-law rule was held still to be the prevailing law of this State. While the court was there concerned with the liability of a wife for larceny of her husband's property, it is clear that the opinion of the court permits of no reasonable argument that it might have held otherwise had the defendant been the husband rather than the wife.

In *People* v. *Decker* (143 App. Div. 590) the defendant appealed from a conviction for larceny of his wife's property. The Appellate Division reversed the conviction on the ground that the evidence adduced before the trial court had failed to connect the defendant with the crime. While the court there did not directly concern itself with the legal competency of a husband to commit larceny or embezzlement of his wife's property, the case must, inferentially at least, be considered of some weight for that proposition, since the Appellate Division, instead of dismissing the indictment, reversed the judgment of conviction and ordered a new trial.

Reference to the adjudications of other jurisdictions lends little aid to the solution of the problem, since they are in sharp disagreement.

Several courts, relying upon the Married Women's Acts, have reached the conclusion that the common-law rule as to criminal liability has been so far abrogated as to subject each spouse to conviction for larceny of the goods of the other. (*Hunt* v. *State,* 72 Ark. 241; 79 S. W. 769; *Beasley* v. *State,* 138 Ind. 552; 38 N. E. 35; *State* v. *Koontz,* 124 Kan. 216; 257 P. 944.) Contrary decisions are found in *State* v. *Arnold* (182 Minn. 313; 235 N. W. 373); *Thomas* v. *Thomas* (51 Ill. 162); *State* v. *Phillips,* 85 Ohio St. 317; 97 N. E. 976); *Rex* v. *Creamer* ([1919] 1 K. B. 564).

The cases are similarly divided in regard to embezzlement. (For liability: *People* v. *Graff,* 59 Cal. App. 706; 211 P. 829; *State* v. *Hogg,* 126 La. 1053; 53 So. 225; *contra, Golden* v. *State,* 22 Tex. App. 1.)

The decisions which insist upon the continuation of the common-law rule in spite of the enactment of the Married Women's Acts can only be understood in the light of the legal principles which rest at the foundation of that rule. One of the bases of the rule was undoubtedly the fact that at common law a wife could not hold property separate from her husband. However, were this the only factor to be considered, the enactment of the Married Women's Acts enabling separate property holdings and resulting in the ability of a wife to sue her husband for conversion (*Whitney* v. *Whitney,* 49 Barb. 319; *Howland* v. *Howland,* 20 Hun, 472), would dispel all reason for the rule.

Even more fundamental to the common law than the absence of separate property holdings, was the principle of unity of relationship. This constituted spouses a unit in the eyes of the law and precluded certain acts from being considered criminal as between them, even though they would be otherwise if committed against a stranger. (Madden on Domestic Relations, pp. 225, 226.) The decisions which refuse to find the common-law rule as to larceny by a spouse abrogated by the Married Women's Acts, consider that this unity of social relationship still exists, though the relationship as to property status has been altered. (3 Vernier, American Family Laws, p. 163.) Indeed, this is made the specific test for the decision in *People ex rel. Troare* v. *McClelland (supra).*

The authorities which favor renunciation of the common-law rule concede that the cases thus holding ignore the fact that the common-law unity must have consisted of more than the ownership of the wife's property by her husband, but find justification for this lack of technical or logical unity in the fact that " the result is more consistent with the modern view of the family, which may well ignore a common-law principle, any possible reason for the existence of which has long since disappeared." (30 Mich. L. Rev. 623 [1932].)

The status of the doctrine of unity in this State is expressed by Chief Judge CARDOZO in *Schubert* v. *Schubert Wagon Co.* (249 N. Y. 253, 255) as follows: " We have held that a wife may not maintain an action against a husband, nor a husband against a wife, for personal injuries, whether negligent or willful. * * * There is no doubt that this was the rule at common law. *Schultz* v. *Schultz* (89 N. Y. 644), decided in 1882, held that the rule had not been changed by the statutes then in force. The disability was reciprocal, affecting the man as well as the woman, and *was based upon the common-law doctrine of the merger of their beings in the unity of marriage.* The Legislature, confronted by that decision and by others of like tenor * * * has left the applicable statutes unchanged in point of substance." (Italics supplied.)

To similar effect are *Allen* v. *Allen* (246 N. Y. 571) and more recently, *Caplan* v. *Caplan* (268 id. 445).

This is the present state of the typical adjudications and the logic variously motivating them.

We are thus confronted with conflicting principles and, to adopt the observations of a distinguished jurist (CARDOZO, The Nature of the Judicial Process, p. 41 *et seq.*), they are " in competition for the mastery."

To reason alone from the doctrine of " merger of their beings in the unity of marriage " (*Schubert* v. *Schubert Wagon Co., supra*), and unqualifiedly to accept it, leads irresistibly to the conclusion that one spouse cannot be guilty of larceny from the other. Again, the logic which either directly or by logical and reasonable inference seems to regard this unity as unimpaired by the Married Women's Acts, likewise would absolve this defendant from criminal responsibility.

However, against these is " another principle, of greater generality, its roots deeply fastened in universal sentiments of justice, the principle that no man should profit from his own inequity or take advantage of his own wrong." (CARDOZO, The Nature of the Judicial Process, *supra.*)

The protection of society and the social interest served by refusing to permit a criminal or offender wholly to avoid the prescribed penal sanction are greater than the interest served by the preservation and enforcement in this instance of the doctrine of merger by unity of marriage.

While apparently " the two fabrics do not fit," nevertheless, the Legislature patently intended a complete emancipation of married women in their property rights and holdings by its enactments to that effect. These acts must be held accompanied by the correlative and necessary power fully to protect, safeguard, enforce and defend those property rights. A criminal prosecution for an invasion of property rights is one of the processes extended to aggrieved persons, not only for the penal attribute attached to such penal sanction but more importantly for its deterrent effect.

To deny a spouse the right to prosecute the other for a crime against the property rights thus assured, would be tantamount to imposing and judicially enacting a limitation never intended by the legislative body. Had such restrictive result been contemplated as against any person, it is fair to assume the Legislature would have expressly so provided in the various so-called emancipatory acts.

Of course, in view of the changed status of the married woman in respect to property rights, the rule must logically operate in

reciprocal manner, and where the female spouse has thus acquired separate rights she must similarly be held to have assumed separate obligations and responsibilities. A parity between husband and wife in property rights and obligations must exist if justice is to prevail.

In view of the disruption of the common-law doctrine of " unity by merger of marriage " to the extent accomplished by statute, the parties to the marital bonds now stand independently of each other in their individual property holdings and necessarily also, as a logical consequence, in the enforcement, protection and defense of them, even as against each other.

Emphasis is placed upon the fact that this decision is merely concerned with the property rights and obligations of those joined in marital relationship and not instances of personal injuries, negligently or willfully inflicted, nor other civil obligations.

In a prosecution, theoretically at least, the State is primarily the party concerned and the informant is relegated to the status of a complaining witness.

For the reasons indicated, it seems to me that the implication of the husband's answerability for a crime of larceny from a wife, indicated in *People* v. *Decker* (*supra*), should be adopted and effectuated rather than extending and further accepting the determination expressed in *People ex rel. Troare* v. *McClelland* (*supra*). This conclusion is more consonant with progressive public policy and more thoroughly in accord with the legislative acts and their logical consequences.

A conception of law must here be established " which realism can accept as true." Under the common-law doctrine there were no illusions or fictions attaching to the unity of the beings by merger of marriage. That status was there firmly established as an actuality in every phase of legal recognition. This conception, in present reality, has been so materially altered in such various and fundamental characteristics through legislative modifications and social revisions that it has become almost illusory. Such being the modern concept and realism, there is no sound basis for reverting to the fictional refinements to re-establish an unreality and thereby to limit the reciprocal property rights of married persons and the natural consequences flowing from them contrary to what I deem to have been the legislative intent.

The motion of the defendant to dismiss upon the ground that, as a matter of law, one spouse cannot commit a larceny from the other is, therefore, denied.*

* Upon the conclusion of the subsequent cross-examination of the complainant and at the close of the People's case, the summons was dismissed upon the facts. — [Note by Court.